**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Larry C. BALLENTINE, Defendant–
Appellant.**

No. 92–3862.

United States Court of Appeals,
Seventh Circuit.

Argued May 14, 1993.

Decided Sept. 3, 1993.

Rehearing and Suggestion for Rehearing
En Banc Denied Oct. 8, 1993.

Michael A. Thill (argued), Andrew B. Baker, Jr., Asst. U.S. Attys., Dyer, IN, for plaintiff-appellee.

Frank R. Martinez, III (argued), Schererville, IN, for defendant-appellant.

Before CUDAHY, MANION and KANNE, Circuit Judges.

CUDAHY, Circuit Judge.

On May 30, 1991, officers of the Indian Shores Police Department in Pinellas County, Florida were instructed to assist a woman in the removal of her personal belongings from a local apartment. Once inside the locked apartment, the officers encountered the appellant Larry Ballentine, who apparently had been living there with the woman. Ballentine was arrested after the police recovered a loaded .38 caliber revolver which Ballentine had attempted to conceal under a seat cushion.

After further investigation, police discovered that, in August, 1989, the gun recovered from Ballentine had been reported to the East Chicago, Indiana Police Department as lost or stolen. Further, it was also discovered that there was an outstanding warrant for Ballentine's arrest because he had failed to appear in 1986 on weapons charges in Illinois state court. As a result, in December, 1991, a federal grand jury indicted Ballentine for receipt of a firearm while a fugitive from justice in violation of 18 U.S.C. § 922(g)(2). He was also charged with transporting a stolen firearm in interstate commerce in violation of 18 U.S.C. § 922(i). After a two day jury trial, Ballentine was convicted and sentenced to a term of 21 to 27 months on each count, to run concurrently. Ballentine appeals both his conviction and his sentence. We affirm.

■ Ballentine attacks his conviction by challenging two jury instructions. One of these—jury instruction 15—reads in pertinent part as follows:

> To sustain the charge of, while being a fugitive from justice, receiving a firearm which was transported in interstate commerce, as charged in Count 1 of the indictment, the government must prove the following propositions:

> .    .    .    .    .

> SECOND: That at the time the defendant received the firearm he was a fugitive from justice....

The other challenged instruction, number 18, reads in pertinent part as follows:

> In order to prove that the defendant was a fugitive from justice it is only necessary that the government prove that the defendant knew that charges were pending against him; that he left the jurisdiction where the charges were pending; and, that he refused to answer those charges by appearing before the Court where the charges were pending. It is not necessary that the defendant left the State with the intent to avoid the charges pending against him.

Ballentine contends that knowledge by the defendant of his status as a "fugitive" is an essential element of 18 U.S.C. § 922(g)(2). As we understand it, this would be knowledge by the defendant of his specific identification with the term "fugitive." In this connection, Ballentine argues that instruction 15 is insufficient because it fails to advise the jury that the defendant must have *known* he was a "fugitive." Further, Ballentine contends that the knowledge requirement in instruction 18 is not enough to cure the erroneous and prejudicial omission in instruction 15.

But knowledge of one's status as a "fugitive" simply is *not* an element of 18 U.S.C. § 922(g)(2). *See, e.g., United States v. Freed,* 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971); *United States v. Horton,* 503 F.2d 810 (7th Cir.1974); *United States v. Schmitt,* 748 F.2d 249, 252 (5th Cir.1984), *cert. denied,* 471 U.S. 1104, 105 S.Ct. 2333, 85 L.Ed.2d 850 (1985); *United States v. Thrasher,* 569 F.2d 894, 895 (5th Cir.1978), *cert. denied,* 439 U.S. 840, 99 S.Ct. 128, 58 L.Ed.2d 137 (1978); *United States v. Goodie,* 524 F.2d 515, 517–18 (5th Cir.1975), *cert. denied,* 425 U.S. 905, 96 S.Ct. 1497, 47 L.Ed.2d 755 (1976); *United States v. Pruner,* 606 F.2d 871 (9th Cir.1979); *United States v. Haddad,* 558 F.2d 968 (9th Cir.1977). Arguing to the contrary, Ballentine cites *United States v. Renner,* 496 F.2d 922 (6th Cir.1974), where the defendant was charged with receiving a firearm while under indictment for a felony. *Renner* held that knowledge of the indictment is an essential element of the offense. *Renner,* 496 F.2d at 922. Because there is a possibility that an indictment will remain sealed, a knowledge requirement would appear to be necessary to address the circumstance of a defendant's receiving a firearm while subject to an undisclosed sealed indictment. Without such a requirement, there could be unintended strict liability.

By way of contrast, "fugitive" status necessarily involves a defendant's knowledge that charges are pending against him. It is not necessary for him to understand that he carries the name or status of "fugitive." Instead, a defendant need only know that charges are pending against him, that he has refused to answer to those charges and that he has left the jurisdiction where the charges are pending. Instruction 18 properly conveyed these requirements to the jury.

■ Ballentine's challenge of his sentence is more complex. Count One of the indictment charges that "[o]n or about May 30, 1991 ... Larry C. Ballentine, defendant herein, then being a fugitive from justice ... did knowingly receive a firearm ... [i]n violation of Title 18, United States Code, Sections 922(g)(2)...."[1] There is no dispute that the district court properly looked to United States Sentencing Guidelines § 2K2.1 in calculating Ballentine's sentence for violating 18 U.S.C. § 922(g)(2). But because § 2K2.1 was amended in November 1990—after Ballentine *received* the firearm but before he was arrested—there is an issue whether the original or the amended version applies. Since the indictment charges *receipt* of a firearm, Ballentine makes the not wholly illogical argument that his sentence must be determined using the guideline in effect on the date that he received the gun. The evidence shows that receipt of the firearm took place in August, 1989, well before the 1990 amendment. Under the version of the guidelines in effect in August 1989, the appropriate guideline range would have been 10 to 16 months rather than the 21 to 27 months dictated by the 1990 amendment.

---

1. The government acknowledges a blatant error in the indictment. Although the indictment charges receipt of a firearm on May 30, 1991 "[t]he evidence introduced at trial showed that Ballentine received the firearm ... sometime in August 1989." Government's Br. at 10.

Ballentine argues that the heavier sentence is illegal.

The government has decided not to press what, at least superficially, might have been its strongest argument to the contrary. Congress has explicitly instructed district courts to apply the guidelines "that are in effect on the date the defendant is sentenced." 18 U.S.C. § 3553(a)(4). Had the district court followed that command here, it would have used the guidelines in effect on November 18, 1992. But, of course, the validity of 18 U.S.C. § 3553(a)(4) under the ex post facto clause of the Constitution, when the section dictates a heavier sentence, has been widely questioned. *See United States v. Lykes,* 999 F.2d 1144, 1148 (7th Cir.1993).

In any event, the district court opted to calculate Ballentine's sentence "using the guidelines in effect on the date charged in the indictment, which is May 30, 1991, on which the Government proved beyond a reasonable doubt that [Ballentine] possessed the firearm that's described in the indictment." Transcript, vol. 4 at 6. From the government's perspective, the district court's use of the guideline in effect on May 30, 1991 (the date of arrest), rather than that in effect on November 18, 1992 (the date of sentencing), is of little consequence, since both contained the 1990 amendment that increased the penalty for violations of 18 U.S.C. § 922(g)(2). For this reason or others the government has disclaimed any reliance on 18 U.S.C. § 3553(a)(4) and instead urges us simply to affirm the district court's decision to use the May 30, 1991, guideline. Government's Br., at 14 n. 7.

As we see this case, by using the guideline in effect on May 30, 1991, the district court effectively sentenced Ballentine for being in possession of a firearm while a fugitive from justice. Indeed, the district court said as much at the sentencing hearing. If a sentence for the offense of *possession* on the date of arrest is permissible, there is no doubt that the amended guideline applies. Although Ballentine's possession of the firearm began in August 1989, before the 1990 amendment to the applicable guideline, it continued until his arrest on May 30, 1991, well after the amendment. We have repeatedly held that if a continuing offense is initiated prior to an amendment of the relevant sentencing guideline, but continues past the effective date of the amendment, application of the amended guideline is appropriate. *See United States v. Bafia,* 949 F.2d 1465, 1476 (7th Cir.1991);[2] *United States v. Fazio,* 914 F.2d 950, 958–59 (7th Cir.1990) and *United States v. Pace,* 898 F.2d 1218, 1238 (7th Cir.1990).[3] Ballentine does not dispute the district court's conclusion that the government adequately proved that he possessed the gun both before and after the 1990 amendment. Thus, had the indictment charged Ballentine with *possession* of a firearm while a fugitive from justice, the continuing nature of this possession would clearly trigger application of the post-amendment, May 30, 1991, guideline. The indictment here, however, does *not* explicitly charge "possession." Rather, it charges "receipt," which is presumably not a continuing offense, and everyone agrees that Ballentine received the gun in August 1989. Hence, Ballentine may be sentenced pursuant to the May 30, 1991, guideline only if he may permissibly be sentenced for possession.

Ballentine's argument that he cannot be punished for possession is disarmingly simple. He contends that by using the May 30, 1991, guideline, the district court effectively sentenced him for "an offense with which [he] had not been charged." Ballentine's Br. at 14. The Fifth Amendment, of course, provides, as far as is relevant here, that "[n]o person shall be held to answer for a … crime, unless on presentment or indictment of a Grand Jury." Ballentine seems to be asking for vindication of his constitutional right to be tried, and punished, only for those

---

**2.** Two defendants filed petitions for certiorari in *Bafia,* both of which were denied. *Kerridan v. United States,* —— U.S. ——, 112 S.Ct. 1989, 118 L.Ed.2d 586 (1992) and *Laporta v. United States,* —— U.S. ——, 112 S.Ct. 1989, 118 L.Ed.2d 586 (1992).

**3.** Two defendants filed for certiorari in *Pace,* both of which were denied. *Savides v. United States,* 498 U.S. 878, 111 S.Ct. 210, 112 L.Ed.2d 170 (1990) and *Cialoni v. United States,* 497 U.S. 1030, 110 S.Ct. 3286, 111 L.Ed.2d 795 (1990).

offenses charged in the indictment.[4] The government, on the other hand, seeks to go beyond the indictment by asking us to affirm a sentence for an offense that it did not, but could have, charged. Since the government effectively controls the indictment process, we have little sympathy for its predicament. We are also troubled by Ballentine's failure to articulate, or even to attempt to articulate, a substantial legal argument supporting his assertion that he has been impermissibly sentenced for an uncharged crime. Indeed, only the district court presented any explanation regarding the propriety of sentencing Ballentine for possession when the indictment charged only receipt.

The district court apparently realized that by referring to proof of Ballentine's possession of the firearm it was treading in, or at least near, the realm of amendment to, or variance from, an indictment. *See* Transcript, vol. 4, at 6. In explaining why the sentence it was about to hand down would not create an impermissible amendment or variance, the court cited our decision in *United States v. Clark,* 943 F.2d 775 (7th Cir. 1991), *cert. denied,* — U.S. —, 113 S.Ct. 3045, 125 L.Ed.2d 730 (1993). There we noted that "in general, either an amendment or a variance [to an indictment] will be allowed to stand if it does not change an essential or material element of the charge so as to cause prejudice to the defendant." *Id.* at 783 (internal quotation marks omitted). From this premise, the district court reached the following conclusion:

> Under the statute that's involved in this case, the receiving or the possessing of a firearm are equally culpable offenses. The indictment charges [Ballentine] with receiving a firearm on May 30, 1991, [thus giving] him adequate notice that he also possessed it on that date, so that did not prejudice him.

Transcript, vol. 4, at 6.[5] Because, as we have previously noted, Ballentine did *not* receive the firearm on May 30, 1991, we cannot adopt the district court's reasoning. Never-

theless, we are of the opinion that Ballentine has not been prejudiced and, therefore, that the sentence may stand.

We have previously explained that proof may vary from allegation as long as (1) it is of an offense the grand jury intended to charge and (2) it does not deprive the defendant of any substantial rights either by depriving him of an adequate opportunity to prepare a defense or by exposing him to a risk of being prosecuted twice for the same offense. *United States v. Kramer,* 711 F.2d 789, 795 (7th Cir.), *cert. denied,* 464 U.S. 962, 104 S.Ct. 397, 78 L.Ed.2d 339 (1983). We address these points in turn. First, we note that Count Two of the indictment charged Ballentine with interstate transportation of a stolen firearm. Proof of Ballentine's possession of the weapon, which is thoroughly, if not inseparably, intertwined with proof of his receipt of the same weapon, from the time he received it in Indiana until he was arrested in Florida is central to this charge. As a result, we conclude that Ballentine's possession of the weapon was an issue the grand jury intended to address.

Second, Ballentine was not deprived of an adequate opportunity to prepare a defense. Again, it is clear that receipt implicates possession. *Ball,* 470 U.S. 856, 862, 105 S.Ct. 1668, 1672, 84 L.Ed.2d 740 (1985). In addition to the nexus between the terms "receipt" and "possession," the indictment informed Ballentine that the date of his violation matched the date he was arrested in possession of the gun. Furthermore, both receipt and possession are encompassed by the language of § 922(g)(2). Ballentine was informed that a violation of this section was at issue and was free to prepare a defense based upon its terms. These facts, taken together, provided adequate notice that Ballentine's possession of the firearm was to be an issue at trial. Although the indictment was far from perfect, Ballentine had all the facts required to prepare his defense.

---

4. Ballentine, however, does not challenge his *conviction* for receipt on the basis of variance between indictment and proof.

5. The court had earlier concluded, correctly, that receipt of a firearm necessarily includes possessing it. Transcript, vol. 4, at 5 (citing *Ball v. United States,* 470 U.S. 856, 862, 105 S.Ct. 1668, 1672, 84 L.Ed.2d 740 (1985)).

Finally, since his receipt and possession stem from a single act, Ballentine is in no danger of subsequent prosecution under an indictment for "possession." *See Ball,* 470 U.S. at 865, 105 S.Ct. at 1673 (precluding conviction for both receipt and possession of the same firearm when the unlawful possession was incident to its unlawful receipt). Hence, although the proof supporting a conclusion that Ballentine continuously possessed a firearm from August 1989 until May 1991 varies from that needed to prove the charge of "receipt" alleged in Count One of the indictment, this variance in no way prejudiced Ballentine. Accordingly, the district court did not err in sentencing Ballentine for possession of a firearm while a fugitive from justice. Since the possession straddled the date on which the relevant guideline was amended, the district court also did not err in applying the amended guideline.

AFFIRMED.