**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Calvin Lamont TOMLINSON,**
**Defendant–Appellant.**

**No. 94–5000.**

United States Court of Appeals,
Fourth Circuit.

Argued June 6, 1994.

Decided Oct. 23, 1995.

**ARGUED:** Randolph Brian Monchick, Assistant Federal Public Defender, Raleigh, North Carolina, for Appellant. William Ar-

thur Webb, Assistant United States Attorney, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Janice McKenzie Cole, United States Attorney, Raleigh, North Carolina, for Appellee.

Before HAMILTON and MICHAEL, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

Vacated and remanded by published opinion. Senior Judge PHILLIPS wrote the majority opinion, in which Judge MICHAEL joined. Judge HAMILTON wrote a dissenting opinion.

## OPINION

PHILLIPS, Senior Circuit Judge:

Calvin Lamont Tomlinson raises several challenges to his conviction for illegal possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).[1] The critical challenge for purposes of this appeal involves the district court's refusal to instruct the jury that the Government had to prove that Tomlinson "knew" the gun he possessed was of a type that made him ineligible for § 921(a)(20)'s "restoration of civil rights" exception to § 922(g)(1).[2]

In a case decided while this appeal was pending, the Supreme Court held that, with regard to a related firearms possession statute, such a mens rea instruction is required. *Staples v. United States,* —— U.S. ——, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994). On this appeal, the Government has conceded that a *Staples* instruction was necessary here and that the failure to give it requires reversal. On that ground alone, we vacate the conviction and remand for a new trial.

Because of the complexity of the issue, we think it appropriate to explain why we think the government's general concession of error was proper, and to indicate the precise nature of the error, hence the corrective action

required upon remand, for the district court's guidance.

## I

In May 1992, the State of North Carolina released Tomlinson from incarceration resulting from his conviction for a drug distribution felony. Upon his release, he was given, as a matter of regular course, a "Certificate of Unconditional Release" which contained a restoration of civil rights, whose effect is a major issue in this case. Several months later, Tomlinson was stopped and searched by two Raleigh city police officers. He was found to be carrying, concealed under his coat, a pistol-grip twelve-gauge shotgun with an 18 inch barrel that was manufactured by the Mossberg Company and marketed as its Model 500A "Persuader." It was not adapted for firing from the shoulder because it lacked a stock. The gun was advertised by its manufacturer as a "security" weapon and could be purchased over the counter in a variety of retail outlets in North Carolina.

Tomlinson was indicted by a federal grand jury for violating 18 U.S.C. § 922(g)(1). As noted above, § 922(g)(1) prohibits "any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year" from possessing a firearm in interstate commerce. The predicate, "convicted," is, in turn, defined—or, rather, qualified—in § 921(a)(20), which provides in part: "Any conviction ... for which a person ... has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such ... restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." 18 U.S.C. § 921(a)(20).

Tomlinson moved before trial to dismiss the indictment on the basis that as a matter of law his possession was lawful in North Carolina. Specifically, his contention was

---

1. Section 922(g)(1) prohibits "any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year" from, inter alia, possessing "in or affecting commerce any firearm or ammunition." 18 U.S.C. § 922(g).

2. Section 921(a)(20) provides in part: "Any conviction ... for which a person ... has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such ... restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." 18 U.S.C. § 921(a)(20).

that under Fourth Circuit precedent, state law determines which, if any, weapons an ex-felon with civil rights restored may lawfully possess and that under the North Carolina Felony Firearms Act, N.C.Gen.Stat. § 14–415.1,[3] possession of a firearm such as Tomlinson's, which had a barrel length of at least eighteen inches and an overall length of at least twenty-six inches, might lawfully be possessed by him as an ex-felon.

The Government's response was to file a superseding indictment alleging that in addition to the gun, Tomlinson was in possession of five rounds of twelve-gauge ammunition in violation of § 922(g)(1). Tomlinson then moved again to dismiss, generally reiterating the above argument, and in addition noting that the Firearms Act does not in any way restrict the possession of ammunition. The Government then filed a response to the new motion to dismiss. In it the Government argued for the first time that Tomlinson's gun, the Mossberg, was a "weapon of mass death and destruction" and thus was prohibited from possession by an ex-felon under N.C.Gen.Stat. § 14–415.1, notwithstanding that it met the statutory length requirements. Under North Carolina law, "weapons of mass death and destruction" include:

> Any type of weapon (other than a shotgun or a shotgun shell of a type particularly suitable for sporting purposes) which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, and which has any barrel with a bore of more than one-half inch in diameter.

N.C.Gen.Stat. § 14–288.8. According to the Government, Tomlinson's gun was not a "shotgun" (because it could not be accurately

aimed or fired from the shoulder), nor was it "particularly suitable for sporting purposes."

■ A hearing on Tomlinson's motion to dismiss was held. On the key question whether the firearm was, within the meaning of N.C.Gen.Stat. § 14–288.8, a "weapon of mass death and destruction," the district court ultimately sided with the Government. An order was entered denying the motion to dismiss:

> [I]n view of the "whole of North Carolina law," *United States v. McLean*, 904 F.2d 216, 218 (4th Cir.1990) the pistol grip Mossberg twelve-gauge, 500A "Persuader" shotgun, classified as a "security" weapon by its manufacturer, discovered beneath the defendant's coat is a "weapon of mass destruction" and not suited for sporting purpose. As such, its possession was illegal, even by the defendant whose civil rights had been restored following a drug conviction. *See also* N.C.Gen.Stat. §§ 14–415.1(a). J.A. 95.[4]

After further defense motions focusing primarily on the mass death and destruction issue were made and denied, the case was tried to a jury in September 1993. At trial, the Government presented three witnesses, all law enforcement officers, who testified variously that Tomlinson possessed the gun in question, that the gun was a Mossberg twelve-gauge shotgun, and that Tomlinson previously had been convicted of a crime punishable by imprisonment for a term exceeding one year.

Following the testimony of the Government's last witness, an agent with the Bureau of Alcohol, Tobacco and Firearms (ATF), defense counsel conducted a voir dire examination of this witness outside the pres-

---

**3.** Section 14–415.1(a) of the North Carolina General Statutes states in its entirety:

It shall be unlawful for any person who has been convicted of any crime set out in subsection (b) of this section to purchase, own, possess, or have in his custody, care, or control any handgun or other firearm with a barrel length of less than 18 inches or an overall length of less than 26 inches, or any weapon of mass death and destruction as defined in G.S. 14–288.8(c), within five years from the date of such conviction. N.C.Gen.Stat. § 14–415.1(a).

**4.** We understand the district court's full reasoning to be that (1) the Mossberg "Persuader" has

the two features that qualify it as a "weapon of mass death and destruction" under the basic statutory definition—*i.e.,* that it "will ... expel a projectile by the action of an explosive" (a shotgun shell) and it "has [a] barrel with a bore of more than one-half inch in diameter," and that (2) it does not have a critical feature that would bring it within the statutory exception—*i.e.,* that though a "shotgun," it is not one "of a type particularly suitable for sporting purposes."

We agree with that analysis as a matter of statutory interpretation and application.

ence of the jury. During this examination, the ATF agent concurred with defense counsel's proposition that Tomlinson could not have known that the firearm he carried was a "weapon of mass death and destruction" since no court had so held and the Mossberg was sold over the counter throughout the state and nation.

The district court agreed. "It's obvious he didn't know. Nobody had so ruled. There's no way the defendant could have known." J.A. 245. The court added, however, that "I don't know that his knowledge [ ] of the weapon is [ ] integral to his commission of the offense." *Id.*

At the conclusion of the evidence, the district court instructed the jury:

> The word "knowingly", as that term [i]s used from time to time in these instructions, means that the act was done voluntarily and intentionally and not because of mistake or accident.
>
> . . . .
>
> For you to find the defendant guilty of this crime, you must be convinced that the government has proved each of the following elements beyond a reasonable doubt. First, that the defendant knowingly possessed a firearm as charged. The term firearm means any weapon that will or is designed to or may readily be converted to expel a projectile by the action of an explosive. . . . Second, that before the defendant possessed the firearm, the defendant had been convicted in a court of a crime punishable by imprisonment for a term in excess of one year, that is, a felony offense.
>
> . . . .
>
> The mere possession of a firearm by a person convicted in any court of a crime punishable by imprisonment for a term

exceeding one year is a violation of the laws of the United States. It is not necessary for the government to prove that the defendant knew that the weapon in his possession was a "firearm" within the meaning of the statute, or that he knew his possession of that firearm was in violation of the law.

J.A. 263–66. Prior to the giving of these instructions, the defendant objected, arguing that the court should additionally charge that "the government is required to prove that Mr. Tomlinson knew, or a reasonable person would have known, that this firearm was a weapon of mass destruction." J.A. 256. The objection was overruled.[5]

The jury convicted Tomlinson; the judge sentenced him to fifteen years imprisonment.

This appeal followed.

## II

*Staples v. United States,* —— U.S. ——, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994), interpreted a firearms registration provision, 26 U.S.C. § 5861(d), which criminalizes, without any express scienter requirement, possession of a *particular kind* of unregistered firearm, a "machinegun."[6] *Staples* held that an implicit scienter element of this statutory offense was knowledge that the firearm possessed had the features that made it a "machinegun" under the statutory definition. *Id.* at ——, 114 S.Ct. at 1804 ("[T]o obtain a conviction, the Government should have been required to prove that petitioner knew of the features of his [firearm] that brought it within the scope of the Act.").

The instant case does not involve a violation of that statute, but rather of 18

---

**5.** Prior to trial, Tomlinson had submitted a proposed jury instruction under which the jury would be told to:

consider whether the government has proven beyond a reasonable doubt that Mr. Tomlinson knew that the firearm was a weapon of mass destruction at the time he possessed it. The government can meet this burden by proving beyond a reasonable doubt that Mr. Tomlinson personally knew that it was a weapon of mass destruction at the time he possessed it. Alternatively, the government can meet this burden by proving beyond a reasonable doubt that a

reasonable person would have known that the firearm was a weapon of mass destruction during the time Mr. Tomlinson possessed it. J.A. 187.

**6.** Although at the time of Tomlinson's trial *Staples* had not been decided, we are obligated to apply it as the law in effect at the time of our decision. *United States v. Schooner Peggy,* 5 U.S. (1 Cranch) 103, 2 L.Ed. 49 (1801); *see also United States v. Rogers,* 18 F.3d 265, 268 (4th Cir.1994).

U.S.C. § 922(g)(1), which prohibits a convicted felon from possessing *any* firearm "in or affecting interstate commerce." Unlike the statute at issue in *Staples,* the § 922(g)(1) offense has an express "knowledge" requirement, via its penalty provision, § 924(a)(2),[7] though it is not explicit as to everything the defendant must have "known." *See United States v. Langley,* 62 F.3d 602, 604–05 (4th Cir.1995) (en banc). In holding that when a statute prohibiting possession of a *particular kind* of firearm contains no express knowledge requirement, a general scienter requirement must be implied that includes knowledge of the firearm's particular criminalizing nature, *Staples* surely must be read to require the same where the statute contains an express knowledge requirement, as does § 922(g)(1) via § 924(a)(2). Section 922(g)(1) does not, however, by its own terms apply, as did the statute at issue in *Staples,* only to a particular type of firearm, but to *all* types. But, the *Staples* scienter requirement must nevertheless apply to the prosecution at issue here because of an interplay of state and federal statutes that does, by incorporation of state law in the federal offense, make conviction turn under the circumstances on the nature of the firearm possessed. This comes about in the following way. A predicate element of the § 922(g)(1) offense is the defendant's status as a convicted "felon." The relevant definition statute, 18 U.S.C. § 921(a)(20) provides, in effect, that felony convictions which otherwise would qualify, are not convictions if, as to them, the defendant has had his "civil rights restored." But,

the statute then includes an exception to this exception: despite any such restoration, the conviction remains a conviction if the restoration "expressly provides that the person may not ship, transport, possess or receive firearms." Determining which part of § 921(a)(20) applies—the initial exception to § 922(g)(1) or the succeeding provision that trumps the exception—necessarily requires resort to state "restoration" law. As it turns out, under North Carolina's Felony Firearms Act a convicted felon is prohibited from possessing some, but not all firearms; hence an ex-felon may or may not have "convicted" status under § 921(a)(20) depending upon the particular type possessed.[8] Among those types whose possession is forbidden is the type the district court held to have been possessed here: a "weapon of mass ... destruction."

 Here then, the question is whether *Staples,* by necessary implication, requires that when in a prosecution under § 922(g)(1) a defendant's status as a convicted felon turns, under state law pertaining to restoration of civil rights, on his possession of a particular type of firearm, the Government must prove, under appropriate instructions, not only that he possessed such a firearm, but that he did so knowing of its particular nature. We hold that this is the necessary implication of *Staples,* and that, as the Government has conceded, we must reverse and remand for a new trial because of the district court's error in failing so to instruct.[9] For

---

7. Section 924(a)(2) states, in part: "Whoever *knowingly* violates subsection ... (g) ... of section 922 shall be ... imprisoned not more than 10 years.... 8 U.S.C. § 924(a)(2)" (emphasis added).

8. It is worth noting that the Certificate of Unconditional Discharge Tomlinson received upon his release from prison did not adequately reflect this fact. The Certificate stated:
 The attached certificate of restoration of rights of citizenship * * * does not * * * entitle you to own, possess, receive, buy, or to otherwise acquire firearms of any description.
This is an inaccurate and misleading statement of the law with regard to the firearm possession rights of ex-felons in North Carolina. In a series of recent decisions—*United States v. McLean,* 904 F.2d 216 (1990), *United States v. Essick,* 935 F.2d 28 (1991), *United States v. McBryde,* 938 F.2d

533 (1991), and *United States v. Shoemaker,* 2 F.3d 53 (1993)—this Circuit has held that notwithstanding North Carolina's Certificate of Unconditional Discharge (which appears to deny an ex-felon *all* firearm possession rights), ex-felons are entitled to possess certain types of firearms. In each case, courts must look to "the whole of state law," in particular the North Carolina Felony Firearms Act, to determine whether the particular firearm at issue, and the place of possession, was forbidden to ex-felons.

9. *United States v. Langley,* 62 F.3d 602 (4th Cir. 1995) (en banc), decided by this court after the Supreme Court's decision in *Staples,* does not undercut this reading of *Staples* and require a different result in this case. In *Langley,* we held that in a § 922(g)(1) "felon-in-possession" prosecution, it is not necessary for the Government to prove that the defendant knew that he had been

purposes of a § 922(g)(1) prosecution, when a defendant's status as a convicted felon turns on the possession of a particular type of firearm, a jury must be instructed that a defendant is not a convicted felon if, despite possessing such a firearm, he did not know it had the particular nature on which his "convicted" status turns. We emphasize, however, that this does not mean knowledge that, as a matter of law, the firearm was, as defined in the North Carolina statute, a "weapon of mass death and destruction," but only knowledge of those facts that bring the firearm within that legal definition. Here, that means, *see* N.C.Gen.Stat. § 14–288.8, only the fact that the Mossberg "Persuader" (1) would "expel a projectile by the action of an explosive" (*i.e.*, would fire shotgun pellets by triggering a shotgun cartridge); (2) had a "barrel with a bore of more than one-half inch in diameter;" and (3) critically, was not a shotgun "of a type particularly suitable for sporting purposes." *See Staples,* ——— U.S. at ——————— n. 3, 114 S.Ct. at 1805–06 n. 3 (Ginsburg, J., concurring in judgment) ("the *mens rea* presumption requires knowledge only of the facts that make the defendant's conduct illegal, lest it conflict with the related presumption, deeply rooted in the American legal system, that, ordinarily, 'ignorance of the law or a mistake of law is no defense to criminal prosecution'"); *United States v. Ballentine,* 4 F.3d 504, 505–6 (7th Cir.1993) (in prosecution under 18 U.S.C. § 922(g)(2) for receipt of a firearm while a fugitive from justice, government need prove only knowledge of facts that created fugitive status, not knowledge that that legal status existed).

## III

For the reasons stated above, we hold that the district court erred in failing to instruct that to convict Tomlinson under § 922(g)(1)—based on his possession of a firearm that makes him ineligible for protection under § 921(a)(20)—he must have known of the firearm's disqualifying features. We therefore vacate Tomlinson's conviction and remand for a new trial if the Government chooses to re-prosecute.

*VACATED AND REMANDED.*

HAMILTON, Circuit Judge, dissenting:

Today, the majority commits two fundamental errors in reaching its conclusion that the government must, in a § 922(g)(1) prosecution, prove that the defendant had knowledge of the characteristics of the firearm he or she possessed when the "defendant's status as a convicted felon turns on the possession of a particular type of firearm." *Ante* at 514. Because this additional evidentiary burden, one not heretofore recognized by this court or any other, has no place in the operation of § 922(g)(1), and because the majority's decision is inconsistent with our recent *en banc* decision in *United States v. Langley,* 62 F.3d 602 (4th Cir.1995) (en banc), I respectfully dissent.

The first fundamental error in the majority's decision is its conclusion that § 922(g)(1) contains an "element" requiring the government to prove that the defendant knew the characteristics of the firearm he or she possessed when the "defendant's status as a convicted felon turns on the possession of a

"convicted of a crime punishable by imprisonment for a term exceeding one year." That holding, one of statutory interpretation, was rested primarily on the canon of construction that Congress is presumed to legislate consistently with "existing law and settled judicial understanding of [the enacted statute's] predecessor statutes." *Id.* at 606. Because § 922(g)(1)'s predecessor statutes consistently had been interpreted not to require proof that a defendant knew of his "convicted felon" status, we thought this compelled interpreting § 922(g)(1), in view of its ambiguity on the point, to the same effect. *Id.* at 605–06.

As invoked in *Langley,* that canon of construction had application only to the "felony-status" element of § 922(g)(1). It had and has no appli-

cation to the element at issue here: the particular nature of a firearm that makes its possession illegal. With respect to that element, as we specifically recognized in *Langley,* there is no comparable history of judicial interpretation to draw upon. *See id.* at 607–08. Furthermore, we were careful in *Langley* to distinguish *Staples'* scienter requirement by pointing out other justifications for requiring knowledge of a firearm's criminalizing nature that had no application to knowledge of "felony-status." *See id.* at 607. For all the reasons drawn upon in *Langley* to distinguish *Staples,* therefore, *Staples'* rationale for requiring knowledge of a firearm's criminalizing nature stands unaffected by *Langley's* refusal to require knowledge of "convicted-felon" status.

particular type of firearm." *Ante* at 514. Section 922(g)(1) contains no such element; a short discussion of the operation of § 922(g)(1) will so illustrate.

Section 922(g)(1) makes it:

unlawful for any person ... who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year ... to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

Thus, to prove a § 922(g)(1) violation, the government must prove three elements beyond a reasonable doubt: "(1) the defendant previously had been convicted of a crime punishable by a term of imprisonment exceeding one year; (2) the defendant knowingly possessed, transported, shipped, or received, the firearm; and (3) the possession was in or affecting commerce, because the firearm had travelled in interstate or foreign commerce at some point during its existence." *Langley,* 62 F.3d at 606.[1]

When the prior felony relied upon by the government is a state offense, a subsidiary question arises *under* the felony status element of § 922(g)(1) which requires a court to look to state law. This is so because § 921(a)(20) provides that a felony conviction which would otherwise qualify as such is not a felony conviction if, as to that particular conviction, the defendant has had his "civil rights restored." We have said the effect of the restoration of rights provision of § 921(a)(20) on the felony status element of § 922(g)(1) is to "exclude[ ] from the definition of a predicate offense any conviction for which the defendant has had his civil rights, including the right to carry a firearm, restored." *United States v. Thomas,* 52 F.3d 82, 84 (4th Cir.1995).

Whether a state felony conviction is a felony conviction for purposes of § 922(g)(1) is determined in accordance with "the law of the jurisdiction in which the proceedings were held." 18 U.S.C. § 921(a)(20). Thus, to determine whether a defendant's civil rights have been restored under state law, we examine "the whole of [state] law." *United States v. McLean,* 904 F.2d 216, 218 (4th Cir.), *cert. denied,* 498 U.S. 875, 111 S.Ct. 203, 112 L.Ed.2d 164 (1990). Under North Carolina law, an ex-felon is prohibited from possessing a "weapon of mass death and destruction." *See* N.C.Gen.Stat. §§ 14–415.1 and 14–288.8.[2]

When the prior state felony conviction can be excluded from the definition of felony conviction under § 921(a)(20), the government bears the evidentiary burden of proving "independently the additional fact that [the defendant's] civil rights ha[ve] not been restored." *Thomas,* 52 F.3d at 85. For example, in *United States v. Essick,* 935 F.2d 28 (4th Cir.1991), the defendant's prior state felony conviction occurred more than five years before the defendant's possession of the firearm that formed the basis of the § 922(g)(1) charge. *Id.* at 29. North Carolina law provided that a defendant's civil rights were not restored if the defendant possessed a firearm within five years of his or her conviction or unconditional discharge from probation or parole, whichever occurred later. *Id.* at 30. Because the prior state felony conviction could have been excluded from the definition of felony conviction under § 921(a)(20)—there was no evidence that the firearm was possessed within five years of the defendant's conviction or unconditional discharge from probation or parole, we required the government to prove the "continuing vitality of the conviction," *i.e.* that the defendant's civil rights had not been restored. *Id.* at 31.

But when the prior state felony conviction cannot be excluded from the definition of felony conviction under § 921(a)(20), the gov-

---

1. The term "crime punishable by imprisonment for a term exceeding one year" is commonly referred to as a "felony."

2. Although I harbor strong doubt that the firearm at issue, which is so widely sold in stores such as Wal–Mart, could be considered a "weap-

on of mass death and destruction," I am, nonetheless, constrained to agree with the majority's reasoning and conclusion, *ante* at 511 n. 4, that the firearm at issue was a "weapon of mass death and destruction" under North Carolina law.

ernment is not required to prove the "additional fact" that the defendant's civil rights have not been restored. *Thomas,* 52 F.3d at 85. For example, in *Thomas,* Thomas was arrested for possession of a firearm within one year of his conviction for a state felony. Under North Carolina law, Thomas' civil right to possess a firearm could not have been restored because five years had not elapsed since his prior state felony conviction. *Id.* at 84. Because Thomas' prior state felony conviction "could not have ... been excluded from the definition of predicate offense under 18 U.S.C. § 921(a)(20), the government did not have the burden of proving independently the additional fact that Thomas' civil rights had not been restored." *Id.* at 85.

From the interplay between § 922(g)(1) and § 921(a)(20), the majority reaches a rather remarkable conclusion: the government must prove that the defendant had knowledge of the characteristics of the firearm he or she possessed when the "defendant's status as a convicted felon turns on the possession of a particular type of firearm." *Ante* at 514. This conclusion is premised on the notion that Tomlinson's civil rights were restored under North Carolina law if he had no knowledge of the characteristics of the firearm that brought the firearm within the definition of a "weapon of mass death and destruction." The critical fact the majority ignores in reaching its conclusion is that because the firearm at issue was a "weapon of mass death and destruction" under North Carolina law, Tomlinson's felony conviction could not have been excluded from the definition of felony conviction under § 921(a)(20). Therefore, the government was not required to prove the additional fact that Tomlinson's civil rights had not been

restored under North Carolina law because the "continuing vitality" of Tomlinson's prior state conviction could not meaningfully be challenged. *Essick,* 935 F.2d at 31; *Thomas,* 52 F.3d at 85. Thus, the only questions for the district court to instruct and for the jury to answer, were whether the government proved, beyond a reasonable doubt, that Tomlinson knowingly possessed the firearm after he committed the prior state felony and "the possession was in or affecting commerce, because the firearm had travelled in interstate or foreign commerce at some point during its existence." *Langley,* 62 F.3d at 606. Because the jury in this case was properly instructed as to the elements of § 922(g)(1), I see no reason to disturb the district court's judgment.[3]

Contrary to the majority's decision, the district court was not required to instruct the jury that the government had to prove that Tomlinson had knowledge of the characteristics of the firearm which brought the firearm within the definition of a "weapon of mass death and destruction" under North Carolina law. Such an instruction is inconsistent with the mechanics of § 922(g)(1) described above, as the defendant's knowledge of the characteristics of the firearm possessed is irrelevant in a § 922(g)(1) prosecution. Indeed, to my knowledge, no court has ever required the government to prove knowledge of the characteristics of a firearm in a § 922(g)(1) prosecution. The reason for this dearth of authority is readily apparent—§ 922(g)(1) prohibits the possession of all firearms, regardless of the firearm's characteristics. In light of the language employed by Congress in § 922(g)(1), it is highly unlikely that Congress intended for the government, under any circumstances, to shoulder the burden of

3. Interestingly, some courts take a wholly different approach to the interplay between § 922(g)(1) and § 921(a)(20). These courts address the question of whether a defendant's civil rights have been restored as a question of law for the court. *See, e.g., United States v. Flower,* 29 F.3d 530, 532 (10th Cir.1994) ("Whether a prior conviction meets the definition of § 921(a)(20), and is therefore properly admitted in a § 922(g)(1) case, is an ultimate legal determination to be decided by the trial judge."); *see id.* at 535 ("Because § 921(a)(20) is definitional, it is the trial judge's responsibility to determine as a

matter of law whether a prior conviction is admissible in a § 922(g)(1) case."). Under *Flower,* if the court determines that, as a matter of law, a defendant's civil rights have been restored with respect to a particular felony conviction, the evidence of that felony conviction is not admissible at the defendant's trial. *Id.* Conversely, if the court determines that, as a matter of law, a defendant's civil rights have not been restored with respect to a particular felony conviction, the evidence of that conviction is admissible at trial as proof of the felony status element. *Id.*

proving knowledge of the characteristics of the firearm in a § 922(g)(1) prosecution.[4]

The second fundamental error in the majority's decision is that the decision runs afoul of our recent *en banc* decision in *Langley*. In *Langley*, we held, with respect to the felony status element, the government need not establish that the defendant had knowledge of his felony status, but rather need only prove the defendant was convicted of a prior felony. *Langley*, 62 F.3d at 605–07. Here, the majority engrafts onto the felony status element a requirement that "when a defendant's status as a convicted felon turns on the possession of a particular type of firearm, a jury must be instructed that a defendant is not a convicted felon if, despite possessing such a firearm, he did not know it had the particular nature on which his 'convicted' status turns." *Ante* at 514. Because *Langley* rejected the notion that proof of knowledge applied to the felony status element, the majority's decision is inconsistent with our decision in *Langley*.

For these reasons, I respectfully dissent.

---

**4.** Because knowledge of the characteristics of the firearm is not an element of the instant offense, *Staples v. United States*, —— U.S. ——, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994), relied upon heavily by the majority, has no application to this case.