# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2010

_____

United States of America,               *
                                  *

        Appellee,          *

                                  *   Appeal from the United States
    v.                       *   District Court for the
                                  *   District of North Dakota.

Michael Howard Reed,        *

                                  *

        Appellant.       *

_____

Submitted: December 17, 2010
Filed: March 8, 2011 (corrected 3/23/11)

_____

Before LOKEN and BYE, Circuit Judges, and MARSHALL,[1] District Judge.

_____

BYE, Circuit Judge.

A jury convicted Michael Howard Reed of possessing a firearm and ammunition while he was a fugitive from justice in violation of 18 U.S.C. §§ 922(g)(2) and 924(a)(2). After a warrant for Reed's arrest had been issued in Nevada, he was found in North Dakota where he had access to a firearm and ammunition locked in a safe. He appeals his conviction arguing the evidence was insufficient to support a finding he constructively possessed the firearm or

_____

[1]The Honorable D.P. Marshall Jr., United States District Judge for the Eastern District of Arkansas, sitting by designation.

ammunition. He also claims the district court[2] erred in instructing the jury "[i]t is not necessary that the Defendant initially left the jurisdiction [of Nevada] with the intent to avoid the charges pending against him." We affirm.

I

Reed[3] is the self-proclaimed attorney general for the Little Shell Nation, an Indian tribe not recognized by the federal government. Reed is not Native American, similar to many members of the unrecognized tribe, who join the organization via the Internet. Reed was "adopted" by the Little Shell Nation in 2006, when he moved to North Dakota. The Little Shell Nation maintains its office and headquarters in Rolette, North Dakota.

In November 2008, Reed was in Nevada. A police officer stopped Reed's vehicle because its registration could not be identified. A search of the vehicle's trunk uncovered marijuana and drug paraphernalia. Reed was arrested and charged with driving without a valid driver's license and possession of a controlled substance. He posted a bond and was released from jail. On March 11, 2009, Reed failed to appear for a hearing on the charges. A bench warrant was issued for his arrest. At some point, Reed returned to the Little Shell Nation's headquarters in Rolette.

Federal authorities began investigating Reed after two phone calls he made in May and June 2009. In May 2009, he left a voice message for a federal district court judge. The message concerned arrest warrants and federal drug conspiracy charges filed against John Lenoir and Patrick Allery, two members of the Little Shell Nation. In the voice message, Reed claimed the federal court's jurisdiction and venue were

[2]The Honorable Daniel L. Hovland, United States District Judge for the District of North Dakota.

[3]Reed also refers to himself as Boa-Kaa-Konan-Na-Ishakawaanden.

improper and Reed would "make [the judge] show cause before Congress and the nation as to why and what he was doing." On June 7, 2009, Reed made a second call to the Federal Bureau of Investigation (FBI). In that phone call, Reed told the FBI "[t]here's a federal judge about ready to get the trigger pulled on him."

During its investigation into the phone calls, the FBI discovered the outstanding Nevada warrant. On June 10, 1999, a deputy marshal traveled to Rolette to find Reed and execute the warrant. Reed was found, arrested, and transported to the jail in Rugby, North Dakota. Several friends visited Reed while he was in the Rugby jail; their conversations with Reed were recorded for security reasons. On June 12 and 13, Reed made threatening statements indicating he would resort to violence if authorities tried to extradite him to Nevada. He also threatened to "blow up" the jail, and said he was going to "fry me a f***ing judge." On June 13, Reed's friend, Isaac Dean, came to the jail and demanded that Reed be released. While Dean was there, Reed yelled from his cell, "[i]f I don't get out of here by ten o'clock, come back and blow this f***ing place up." Later that same day, in a phone conversation with both Dean and Reed's girlfriend, Susan Davis, Reed referred to a nine millimeter firearm and ammunition inside a safe:

> They want me front and center in Nevada . . . So, that's why I said if somebody did come to get me, I . . . they wouldn't make it. I wouldn't be leaving the country. I'd kill the motherf***er. Yeah. Cause I'm not gonna go there. . . . Well, you know when I get back, I'll open up the safe and I'm gonna put my 9 millimeter right there . . . with cop killer bullets in it. Let one of those motherf***ers come up to me . . . I'm not gonna let 'em keep taking me to jail.

Presentence Report (PSR) at 4-5.

Based on Reed's statements, a search warrant was obtained for the Little Shell Nation headquarters in Rolette. During the search, agents found a safe inside the

office where Reed worked.  The Little Shell Nation spokesperson told a federal agent that Reed owned the safe.  A Desert Eagle nine millimeter firearm was found inside the safe, as well as fifteen rounds of Remington nine millimeter bullets, and ten rounds of E.L.D. Eldorado nine millimeter bullets.  In addition to the firearm and the ammunition, the safe contained other items which belonged to Reed, such as papers and books.  During an interview conducted after the execution of the search warrant, Reed made statements indicating he owned both the safe and the firearm found in the safe, such as "[w]ho opened my safe" and "[w]ho has my gun?"  The firearm was traced back to a licensed dealer in Helena, Montana.  Federal firearm records confirmed that Reed purchased the firearm (which was manufactured in Israel) on October 30, 1995.

A federal grand jury indicted Reed on one count of being a fugitive from justice in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(2) and 924(a)(2).  Reed represented himself at trial, with a federal public defender appointed as standby counsel.  The government had no evidence of Reed's actual possession of the firearm or ammunition and thus relied upon a constructive possession theory.  For his part, Reed presented evidence from Greg Davis, also known as Zakiz-Aanakward, the spokesperson for the Little Shell Nation.  Davis claimed Reed did not have the combination to the safe in his office and had to ask permission to have the safe opened at any time.  Davis further claimed the combination to the safe was, coincidentally, changed during the time Reed was in Nevada.

As to Reed's status as a fugitive from justice, the district court instructed the jury, in part, as follows:

> "Fugitive from justice" as used in these instructions means a person who has fled from any State to avoid prosecution for a crime.  This definition is satisfied if you find (1) the Defendant knew charges were pending against him, (2) the Defendant left the jurisdiction where the charges were pending, and (3) the Defendant refused to answer those charges.

It is not necessary that the Defendant initially left the jurisdiction with the intent to avoid the charges pending against him. A defendant does not have to know he was termed a "fugitive."

Reed objected to the definition and asked the district court to modify it by adding the definition of a "fugitive" from Black's Law Dictionary: "A 'fugitive' is a criminal suspect or a witness in a criminal case who flees, evades, or escapes arrest, prosecution, imprisonment, service of process, or the giving of testimony, especially by fleeing the jurisdiction or by hiding." The district court agreed to the modification and instructed the jury accordingly. Reed did not otherwise object to the district court's instruction. Significantly, he did not object to the part of the instruction which stated "[i]t is not necessary that the Defendant initially left the jurisdiction with the intent to avoid the charges pending against him."

The jury found Reed guilty. After being sentenced to eighteen months, Reed filed this timely appeal.

II

Reed first argues the evidence was insufficient to find he constructively possessed the firearm or ammunition found inside the safe. We review challenges to the sufficiency of the evidence supporting a criminal conviction de novo, "viewing evidence in the light most favorable to the government and accepting all reasonable inferences in favor of the jury's verdict." United States v. Garcia, 521 F.3d 898, 901 (8th Cir. 2008).

In order to prove Reed constructively possessed the firearm or ammunition found inside the safe, the government had to show Reed "exercised ownership, dominion, or control either over the firearm [or ammunition] or the premises on which it is found." United States v. Anderson, 618 F.3d 873, 880 (8th Cir. 2010) (citation and internal quotation marks omitted). The government could show Reed exercised

dominion or control over the firearm or ammunition "either directly or through another person or persons." 8th Cir. Model Crim. Jury Instruction 8.02; see also United States v. Ali, 63 F.3d 710, 716 (8th Cir. 1995) (noting the Eighth Circuit's approval of the model instruction).

The evidence presented by the government showed Reed was at the Little Shell Nation headquarters after leaving Nevada. The government proved a safe was located inside Reed's office at the headquarters. A firearm and ammunition were found inside the safe, along with other of Reed's personal affects. In addition, the government presented evidence of recorded jail conversations in which Reed said he would get his firearm out of the safe when he got out of jail. Significantly, Reed said "I'll open up the safe," rather than indicating he would have to rely upon someone else to open the safe for him. When questioned by agents about the safe and firearm, he referred to the safe as "my safe" and asked agents who has "my gun." Finally, the government proved Reed purchased the firearm in October 1995.

Reed argues this evidence was insufficient because Greg Davis testified Reed did not know the combination to the safe in his office after returning from Nevada and had to ask permission to have the safe opened. The jury was, however, free to reject Davis's testimony. See, e.g., United States v. Felix, 996 F.2d 203, 207 (8th Cir. 1993) ("The jury is free to believe or to reject any witness's testimony in its entirety. The jury is free also to accept one or more witnesses's testimony only in part and thereby to create its own version of the facts.") (citation omitted). We conclude the evidence was sufficient for a jury to find Reed exercised ownership, dominion or control over the firearm or ammunition, or exercised dominion or control over the premises on which the firearm and ammunition were found.

Reed also argues the district court erred in instructing the jury it was not necessary to find Reed had the intent to avoid the charges pending against him at the moment he left Nevada. Because Reed did not object to the part of the instruction he

now challenges, we review the issue for plain error only. See United States v. Gianakos, 415 F.3d 912, 919-20 (8th Cir. 2005) (applying plain error review to an instruction modified at the request of the defendant and thereafter acquiesced in because the defendant "did not adequately object to the instruction given by the district court"). "Plain error occurs if the district court deviates from a legal rule, the error is clear under current law, and the error affects the defendant's substantial rights." United States v. Crose, 284 F.3d 911, 912 (8th Cir. 2002). In addition, before plain error will justify the appellate court's exercise of discretion to reverse a conviction, it must "seriously affect[] the fairness, integrity, or public reputation of judicial proceedings." United States v. Smith, 450 F.3d 856, 859 (8th Cir. 2006) (quoting United States v. Pirani, 406 F.3d 543, 553 (8th Cir. 2005)).

Reed is not entitled to plain error relief because he cannot show (among other things) the alleged error was clear under current law. At the time Reed was tried, at least two circuits had concluded a defendant does not have to intend to avoid charges at the moment he leaves a jurisdiction in order to be considered a fugitive from justice. See United States v. Ballentine, 4 F.3d 504, 506 (7th Cir. 1993) (approving an instruction which stated "[i]t is not necessary that the defendant left the [jurisdiction] with the intent to avoid the charges pending against him"); United States v. Spillane, 913 F.2d 1079, 1081 (4th Cir. 1990) (discussing a § 922(g)(2) charge and finding "no logical distinction between the person who leaves to avoid prosecution and the person who, once gone, refuses to return for the same reason, to avoid prosecution"). Because the plain error standard cannot be met when the case law from our circuit does "not supply a clear answer" but the government's position is supported by "at least one case," United States v. Pazour, 609 F.3d 950, 953-54 (8th Cir. 2010), we leave for another day the merits of the issue raised by Reed.

III

We affirm Reed's judgment of conviction.

_____