**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Eabie McLEAN, a/k/a Erbie McLean,**
**Defendant–Appellee.**

**No. 89–5231.**

United States Court of Appeals,
Fourth Circuit.

Argued March 8, 1990.

Decided June 4, 1990.

---

John Stuart Bruce, First Asst. U.S. Atty., argued, Margaret Person Currin, U.S. Atty., Raleigh, N.C., for plaintiff-appellant.

William Everette Martin, Federal Public Defender, Raleigh, N.C., for defendant-appellee.

Before PHILLIPS, SPROUSE, and CHAPMAN, Circuit Judges.

SPROUSE, Circuit Judge:

In this appeal, the United States challenges a district court judgment dismissing the indictment of a convicted felon for possessing a firearm in violation of 18 U.S.C. § 922(g)(1). The court found that, since Eabie McLean's civil rights had been restored after his release from North Carolina prison, he could not be charged under the federal statute because North Carolina had not expressly prohibited him from possessing a gun. We reverse and order the indictment reinstated.

### I

McLean was convicted of multiple state drug offenses and sentenced to imprisonment in a facility of the North Carolina Department of Correction where he served from June 14, 1983, until his release on May 25, 1984. Four years later, police questioned McLean outside a Dunn, North Carolina, club and reported seizing a loaded .38 caliber handgun from a bag he was carrying.

**1.** The North Carolina Constitution provides that a person convicted of a felony may not vote or hold office until his or her citizenship rights have been restored. N.C. Const. art. VI, §§ 2(3) & 8; *see also* N.C.Gen.Stat. § 163–55(2) (voting rights). A convicted felon is also statutorily barred from jury duty until his or her citizenship rights have been restored. N.C.Gen.Stat. § 9–3.

McLean was indicted in federal court under 18 U.S.C. § 922(g)(1), which makes it unlawful for a person who has been convicted of a crime punishable by imprisonment for a term exceeding one year to possess a firearm in or affecting commerce. However, a person whose civil rights have been restored after serving a sentence will automatically be exempted from the prohibition unless the state affirmatively restricts the former felon from such activities:

What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights *expressly provides* that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(20) (emphasis added).

The district court examined the "Certificate of Unconditional Discharge" issued by the North Carolina Parole Commission, evidencing that McLean's citizenship rights had been restored.[1] It contained the following statement:

### FOR CONVICTED FELONS ONLY— RESTORATION OF RIGHTS

Under Title VII, Sections 1201–02, of the Omnibus Crime Control and Safe Streets Act of 1968, the attached Certificate of Restoration of Rights of Citizenship * * * does not * * * entitle you to own, possess, receive, buy, or otherwise acquire firearms of any description. If you are found in violation of the above feder-

Chapter 13 of the General Statutes of North Carolina describes the procedures for restoration of citizenship. It provides, in part, that citizenship rights will be restored upon the unconditional discharge of an inmate. N.C.Gen. Stat. § 13–1(1). The chapter also mandates issuance of a certificate or order "evidencing the offender's unconditional discharge and specifying the restoration of his rights of citizenship." N.C.Gen.Stat. § 13–2.

al act, you are subject to a fine of not more than $10,000.00 or imprisonment for not more than two years or both.

The court reasoned that the certificate warned McLean that then-existing federal law [2] prohibited former felons from possessing firearms, but that the warning did not amount to an express state prohibition against possessing or carrying firearms. The district court therefore concluded that McLean's possession of a firearm was not a violation of § 922(g)(1). We disagree.

## II

■ Rather than focusing solely on the language of the certificate, we think a better reasoned approach is presented by the Sixth Circuit's recent decision in *United States v. Cassidy*, 899 F.2d 543 (6th Cir. 1990). There, in determining for purposes of § 921(a)(20) whether a state had restored the civil rights of a "convicted felon," the court considered whether a reviewing court must look to the whole of state law or simply to the certificate granting the restoration of civil rights. After examining the legislative history of § 921(a)(20), the Sixth Circuit concluded that Congress intended "deference to state law with respect to the federal firearms privileges of persons convicted in that state," *Cassidy*, at 899 F.2d at 549 and that:

> It would frustrate the intent of Congress, however, to focus solely upon the document transferred to the convict upon release. The intent of Congress was to give effect to state reforms with respect to the status of an ex-convict. A narrow interpretation requiring that we look

only to the document, if any, evidencing a restoration of rights, would frustrate the intent of Congress that we look to the whole of state law, including state law concerning a convicted felon's firearm privileges.

*Id.* at 548. We agree with the rationale expressed by the *Cassidy* court and therefore look to the whole of North Carolina law "to give effect to state reforms with respect to" firearm privileges accorded McLean. *See, e.g., Presley v. United States*, 851 F.2d 1052 (8th Cir.1988) (looking to state law to determine whether civil rights had been restored); *see also* 27 C.F.R. § 178.11.

■ The North Carolina Felony Firearms Act restricts the possession of handguns and certain other firearms by persons convicted of serious felonies (including drug offenses such as those for which McLean was convicted) for five years after their release from prison. N.C.Gen.Stat. § 14-415.1(a). When the Firearms Act became law in 1971, felons were not automatically restored to full citizenship immediately on their release from prison; [3] however, those felons whose citizenship rights had been restored were exempt from the Act. N.C.Gen.Stat. § 14-415.2 (later repealed). Then in 1973, North Carolina amended the General Statutes to restore felons to full citizenship immediately upon their unconditional discharge. N.C.Gen.Stat. §§ 13-1 *et seq.* When it became apparent that this would make virtually all felons exempt from the Firearms Act, *see State v. Currie*, 284 N.C. 562, 202 S.E.2d 153 (1974), the General Assembly repealed the exemption

---

**2.** The statute in effect in 1984 prohibited firearm possession by a felon unless he or she had specific authorization to possess firearms. 18 U.S.C.App. §§ 1201–1203 (repealed), *construed in United States v. Hardin*, 696 F.2d 1078, 1079 (4th Cir.1982). In contrast, the current federal law, enacted in 1986, provides that a state has included the right to firearms with other civil rights restored to an ex-felon unless the state expressly restricts that right. 18 U.S.C. § 921(a)(20); *see United States v. Kolter*, 849 F.2d 541, 543–44 (11th Cir.1988) (discussing the history of the federal firearms laws).

**3.** Prior to 1971, felons were not eligible for restoration of citizenship rights until two years

after their release from prison, at which time their citizenship could be restored after a hearing by a superior court judge. In 1971 the General Statutes were revised to restore citizenship to felons who could attest that: (a) the Department of Correction had recommended their citizenship be restored; (b) two years had elapsed since their release, during which time they had not been convicted of a crime; or (c) they had received an unconditional pardon. N.C.Gen.Stat. §§ 13-1 *et seq.* (amended in 1973). For a discussion of the development of North Carolina's citizenship and firearms laws, see *State v. Currie*, 284 N.C. 562, 202 S.E.2d 153 (1974).

for felons whose citizenship rights had been restored. 1975 N.C.Sess.Laws ch. 870, § 3, *repealing* N.C.Gen.Stat. § 14–415.2.

Clearly, North Carolina intends to restore to ex-convicts their general citizenship rights but limit their firearms privileges. We therefore hold that the Felony Firearms Act "expressly provides" the circumstances under which a "person may not ship, transport, possess or receive firearms," as required by 18 U.S.C. § 921(a)(20). The facts alleged here—that McLean was carrying a handgun within five years of his release from prison—fall squarely within the express provisions of the Act. *See* N.C.Gen.Stat. § 14–415.1.[4]

### III

The language of the "Certificate of Unconditional Discharge" does not alter this analysis. Even if construed as merely a warning that firearm possession could constitute a violation of federal law, it would not negate the express state law prohibition on firearm possession under the facts alleged here. Accordingly, the judgment of the district court is reversed and remanded with instructions to reinstate the indictment.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**

---

**4.** N.C.Gen.Stat. § 14–415.1 allows an ex-felon to possess firearms in his or her home and to carry firearms with barrels measuring over 18 inches in length or an overall length of more than 26 inches. If we were faced with deciding the validity of an indictment of an ex-felon for possessing firearms as allowed under the North Carolina Felony Firearms Act, we might reach a different result. However, we need not reach that question today, since the state statute prohibits an ex-felon from carrying a handgun within five years of his release—the conduct for which McLean was indicted.