UNITED STATES of America,
Plaintiff–Appellee,

v.

Randall Dwight SHOEMAKER,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Larry Johnson NORMAN,
Defendant–Appellant.

Nos. 92–5304, 92–5305.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 5, 1993.

Decided Aug. 5, 1993.

---

Edward Jennings, Taylorsville, NC, Harold Johnson Bender, Charlotte, NC, for appellant Shoemaker.

John Elbert Hall, Wilkesboro, NC, argued, for appellant Norman.

Thomas J. Ashcraft, U.S. Atty., Charlotte, NC, argued, for appellee.

Before RUSSELL and HALL, Circuit Judges, and PAYNE, United States District Judge for the Eastern District of Virginia, sitting by designation.

## OPINION

DONALD RUSSELL, Circuit Judge:

Defendants Randall Shoemaker and Larry Norman were both convicted of various drug and firearm offenses in connection with a drug transaction at a Hardee's restaurant. Shoemaker was also convicted of drug and firearm offenses in connection with a later search of his home, which produced numerous guns and substantial evidence of drug trafficking.

Both appeal their convictions, raising a plethora of arguments. We reject all of these arguments except one: that the district court erred in not dismissing Shoemaker's indictment under 18 U.S.C. § 922(g)(1) for having firearms in his home. Accordingly, we affirm in part and reverse in part.

## I

Norman and Shoemaker were charged in the same five-count indictment. Counts One, Two and Three, respectively, charged Shoemaker, in connection with the search of his home, with possessing marijuana with intent to distribute, under 21 U.S.C. § 841(a)(1), using and carrying a firearm in relation to the marijuana charge, under 18 U.S.C. § 924(c), and possessing a firearm as a convicted felon, under 18 U.S.C. § 922(g)(1). Counts Four and Five, respectively, charged both Norman and Shoemaker, in connection with the transaction at Hardee's, with conspiring to possess marijuana with intent to distribute, under 21 U.S.C. § 846, and using and carrying a firearm in relation to a marijuana conspiracy, under 18 U.S.C. § 924(c).

Shoemaker moved to dismiss Count Three of the indictment on the ground that section 922(g)(1) did not apply to his possession of firearms in his home. The district court denied the motion and submitted all five counts to the jury. Shoemaker was convicted on all five counts; Norman was convicted on Counts Four and Five. Both appeal.

## II

Shoemaker contends that the district court erred in not dismissing Count Three, which charged that his possession of firearms in his home violated 18 U.S.C. § 922(g)(1)'s prohibition against possession of firearms by a convicted felon. We agree.

Section 922(g)(1) prohibits "any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year" from possessing a firearm in interstate commerce. "[C]rime punishable by imprisonment for a term exceeding one year" is defined in section 921(a)(20), which provides in part:

> Any conviction ... for which a person ... has had civil rights restored shall not be considered [a crime punishable by imprisonment for a term exceeding one year] for purposes of this chapter, unless such ... restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(20).

It is uncontested that Shoemaker was convicted of manslaughter in North Carolina and sentenced to six years imprisonment, and that his civil rights were restored following this conviction. Shoemaker, thus, cannot be indicted under section 922(g)(1) for possessing a firearm unless his restoration of civil rights "expressly provide[d] that [he could] not ship, transport, possess, or receive firearms." Whether his restoration did so "expressly provide" is the only issue before us.

We have previously held that in determining whether a defendant's restoration "expressly provide[d] that [he could] not ship, transport, possess, or receive firearms," a court must examine not only the state's certificate granting restoration of civil rights,

but the actual effect of the restoration under the state's firearms laws on the defendant's ability to ship, transport, possess, or receive firearms. *United States v. Essick,* 935 F.2d 28, 30 (4th Cir.1991); *United States v. Mc-Lean,* 904 F.2d 216, 218 (4th Cir.), *cert. denied,* 498 U.S. 875, 111 S.Ct. 203, 112 L.Ed.2d 164 (1990). It is often unclear from examining the restoration certificate and the underlying state law, however, whether the defendant's restoration "expressly provides that he may not ship, transport, possess, or receive firearms," because frequently the restoration limits the defendant's firearm privileges partially but not completely. In confronting this ambiguity, we do not write on a clean slate; we have addressed it in several of our prior cases.

In *McLean,* the defendant, who had been previously convicted of a drug felony but had had his civil rights restored, was charged with violating section 922(g)(1) by carrying a handgun. The defendant's restoration certificate indicated that it did not entitle him "to own, possess, receive, buy, or otherwise acquire firearms of any description." *Id.* at 217. Under North Carolina law, however, he was entitled to possess firearms over a certain length and to possess any type of firearm in his home or business, and all restrictions on his firearm possession ceased after five years. *Id.* at 218–19 & n. 4. Thus, looking both to his certificate and state law, *id.* at 218, the defendant's restoration provided that he could not possess firearms under a certain length outside of his home for five years. The only issue in the case was whether the defendant's restoration had placed him within the section 921(a)(20) exception to section 922(g)(1); his restoration did place him within this exception to 922(g)(1) unless it "expressly provide[d] that [he could] not ship, transport, possess, or receive firearms."

We did not resolve whether this restoration "expressly provide[d] that [he could] not ship, transport, possess, or receive firearms" by answering simply "yes" or "no." Instead, we focused on the underlying section 922(g)(1) charge and examined whether the conduct that the government alleged violated section 922(g)(1) was conduct that was expressly prohibited by the restoration. *Id.* at

219. Because "[t]he facts alleged . . .—that McLean was carrying a handgun within five years of his release from prison—f[e]ll squarely within the express provisions" of the restoration, *id.,* we concluded that, for the purposes of that particular case, the defendant's restoration did "expressly provide that [the defendant could] not ship, transport, possess or receive firearms" within the meaning of section 921(a)(20). *Id.*

We followed the same approach in *Essick* and *United States v. McBryde,* 938 F.2d 533 (4th Cir.1991). Both of these cases involved defendants who had previously been convicted of felonies but had had their civil rights restored under terms identical to the defendant's restoration in *McLean.* In *Essick,* we stated that for the government to make the necessary showing under section 921(a)(20) that the defendant's restoration "expressly provide[d] that [the defendant could] not ship, transport, possess or receive firearms," it had to demonstrate that the restoration prohibited the defendant from possessing firearms in the same manner for which he was charged under section 922(g)(1). *Essick,* 935 F.2d at 31. Because the defendant's restoration only prohibited the defendant from possessing firearms for five years and the government did not allege that the possession for which he was charged under section 922(g)(1) occurred within five years of the restoration, we held that the government failed to demonstrate that the restoration "expressly provide[d] that [the defendant could] not ship, transport, possess or receive firearms" within the meaning of section 921(a)(20). *Id.* Similarly, in *McBryde* we found that the government failed to show that the defendant's restoration "expressly provide[d] that [the defendant could] not ship, transport, possess or receive firearms" because the restoration did not prohibit possessing firearms in the manner for which he was charged in that case under section 922(g)(1). *McBryde,* 938 F.2d at 533; *see also United States v. Haynes,* 961 F.2d 50, 51–53 (4th Cir.1992).

Applying the analysis of *McLean, Essick,* and *McBryde* to the case at bar is straightforward. Shoemaker's restoration certificate stated that it did not entitle him to "own,

possess, receive, buy, or otherwise acquire firearms of any description." Under North Carolina law, however, he was entitled to possess firearms over a certain length and to possess any type of firearm in his home or business, and all restrictions on his possession of firearms ceased after five years. N.C.Gen.Stat. 14–415.1(a) (1986). Thus, as did the restorations in *McLean, Essick,* and *McBryde,* Shoemaker's restoration provided that he could not possess firearms under a certain length outside of his home for five years.

To determine whether his restoration "expressly provide[d] that [he could] not ship, transport, possess or receive firearms" within the meaning of section 921(a)(20), we must examine the section 922(g)(1) charge against Shoemaker and determine whether the conduct that the government alleged violated section 922(g)(1) was conduct that was prohibited by his restoration. *McLean,* 904 F.2d at 219. The government does not dispute that Shoemaker was charged under section 922(g)(1) with possessing firearms in his home. Nor does it dispute that his restoration did not prohibit him from possessing firearms in his home. Thus, Shoemaker's restoration did not "expressly provide that [he could] not ship, transport, possess or receive firearms" within the meaning of section .921(a)(20), and section 921(a)(20) exempted Shoemaker from the provisions of section 922(g)(1). As a result, the district court erred in denying Shoemaker's motion to dismiss Count III, which charged him with violating section 922(g)(1) by possessing firearms in his home.*

## III

For the reasons stated, we reverse Shoemaker's conviction on Count Three, but affirm his convictions on Counts One, Two, Four, and Five and affirm Norman's convictions on Counts Four and Five.

---

* Shoemaker and Norman make several other contentions as well. Shoemaker argues that there was insufficient evidence to convict him on any of the counts charged and that Counts One, Two and Three were improperly joined with Counts Four and Five. Norman argues that there was

*AFFIRMED IN PART, REVERSED IN PART.*

insufficient evidence to convict him on Counts Four and Five and that, in any event, he was entitled to a new trial because the jury heard certain inadmissible evidence which prejudiced him. After reviewing the record and the briefs, we reject all of these contentions.