28 F.3d 1211
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Shirley INGRAM, Defendant-Appellant.
 No. 93-5403.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 11, 1994.
Decided July 15, 1994.
 
 Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Graham C. Mullen, District Judge. (CR-92-193-MU)
 Aaron Edmund Michel, Charlotte, NC, for appellant.
 Robert James Conrad, Jr., Chief, Criminal Division, U.S. Attys. Office, Charlotte, NC, for appellee.
 Jerry W. Miller, U.S. Atty., Brian L. Whisler, Asst. U.S. Atty., Charlotte, NC, for appellee.
 W.D.N.C.
 AFFIRMED.
 Before WIDENER and LUTTIG, Circuit Judges, and WILSON, United States District Judge for the Western District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Shirley Ingram appeals from his conviction following a one-day jury trial for possession of a firearm by a convicted felon, which firearm had been transported in interstate commerce, under 18 U.S.C. Secs. 922(g)(1) & 924(e). We affirm.
 
 I.
 
 2
 The facts of this case are relatively simple and uncontroverted. On the night of March 16, 1992, Ingram stayed at the home of Harold Brown. When Brown and his wife awoke the next morning Ingram was gone, as well as a number of household items, including Brown's shotgun. Later that morning Charlotte Police Officer Pat Tynan encountered Ingram during his patrol of Wayt Street. Ingram was openly carrying a shotgun in his hands. Tynan stopped Ingram and asked him about the shotgun. After inspecting the shotgun and finding the trigger mechanism in good working order but unloaded, Tynan returned it to Ingram.[1] Tynan then recorded the encounter and a description of the shotgun, a .12 gauge, model 94B, Higgins/Sears & Roebuck, on a form. When Tynan returned to the station, he filled out the rest of the form, including a prior convictions section, and discovered that Ingram was a three-time convicted felon.
 
 
 3
 On August 5, 1992, Ingram was charged in a one-count indictment with possession of firearm, which had been transported interstate, by a convicted felon in violation of 18 U.S.C. Sec. 922(g)(1) & 924(e). At the conclusion of a one-day jury trial on March 25, 1993, he was convicted. He was sentenced to a term of imprisonment for 235 months and 3 years of supervised release.
 
 II.
 
 4
 Ingram raises three issues on appeal. First, whether the court abused its discretion in refusing to compel a defense witness to appear and testify; second, whether the court properly charged the jury regarding the elements of the offense charged; and third, whether the evidence is sufficient to support the jury verdict. We address each of these arguments in turn.
 
 A.
 
 5
 Ingram contends that the district court violated his Sixth Amendment right to compulsory process when it failed to compel the appearance and testimony at trial of defense witness Alfred White. In response, the government argues that White's testimony was not material, and in any case only corroborated Ingram's testimony. We review the district court's decision regarding production of witnesses for abuse of discretion. See United States v. Clark, 928 F.2d 639, 644 (4th Cir.1991).
 
 
 6
 The government's case-in-chief rested shortly before lunch on the first day of trial.[2] Thereafter, Ingram informed the court that his first defense witness, Alfred White, had failed to appear although he had been subpoenaed and moved to hold him in contempt. Upon the court's inquiry, Ingram stated that White would testify that the shotgun would not fire during a test-fire he had performed in early April 1992. He then offered for admission White's written statement stating the same substance. Without decision as to admission of the statement, the court granted a several hour recess, which overlapped the lunch break, to give Ingram time to locate his witness. When the court reconvened, White still had not appeared. The court then denied admission of the written statement, although it was made part of the record, explaining that the statement went to the "operability" of the shotgun and that the government had been proceeding under the "designed to fire" portion of the statute.
 
 
 7
 To find a violation of the Compulsory Process Clause of the Sixth Amendment more than a mere absence of testimony is necessary; the testimony must be material and favorable to the defense. United States v. Valenzuela-Bernal, 458 U.S. 858, 867-71 (1981). At trial, Ingram argued that because the shotgun had been damaged in an accident, was wrapped with tape, and would not fire, it had been rendered inoperable and as such was not a "firearm" covered by 922(g)(1). Thus, he argues that White's testimony was material and favorable to his defense because it would have proven the gun to be inoperable. We disagree.
 
 
 8
 Section 921(a)(3) defines firearm, in part, as:
 
 
 9
 (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive;....
 
 
 10
 Clearly, whether or not the shotgun was actually operable at the time when Ingram possessed it is not required for conviction, as it is enough that the gun was "designed to" or could "readily be converted" to fire. See United States v. Willis, 992 F.2d 489, 491 n. 2 (4th Cir.), cert. denied, 62 U.S.L.W. 3248 (U.S.1993). Thus, White's testimony as to whether or not the gun actually fired would not in any way have assisted Ingram's defense and thus was neither material nor favorable. We are accordingly of opinion that the district court did not abuse its discretion nor violate Ingram's compulsory process rights when it proceeded with the case. It properly instructed the jury that a firearm meant a weapon which was designed to expel a projectile in the words of the statute.
 
 B.
 
 11
 Ingram next challenges the district court's jury instructions as to the elements of a Section 922(g)(1) offense.[3] The district court instructed the jury that the government had to prove four elements:
 
 
 12
 one, that the defendant has been convicted in any Court of a crime punishable by imprisonment for a term exceeding one year; two, that the defendant possessed a firearm; three, that such firearm had been shipped in interstate commerce; and four, that the defendant did such act knowingly and willfully.
 
 
 13
 Ingram contends that Section 921(a)(20), which defines the term "crime punishable by imprisonment for a term exceeding one year," required the court to specifically instruct the jury to decide whether or not Ingram's civil rights had been restored as to the predicate felony as a specific component to the first element charged. He also argues that the government failed to meet its burden of proof on this "restoration component." Ingram made no objection to the court's instruction at trial. Accordingly, we review the court's instructions for plain error.[4] See United States v. Olano, 61 U.S.L.W. 4421, 4423 (1993).
 
 
 14
 In United States v. Clark, 993 F.2d 402, 406 (4th Cir.1993) this circuit held "that the lack of restoration of civil rights and the right to possess a firearm is not an element of the offense stated in Sec. 922(g)." We did, however, acknowledge that the government must prove, in establishing a predicate felony conviction, that a defendant's civil rights and right to possess a firearm have not been restored.[5] 993 F.2d at 405. In the present case, the indictment clearly cites a conviction on July 8, 1987, for which five years could not have expired prior to Ingram's possession of a firearm in early March 1992.[6] The jury was presented with testimony as to this conviction. In addition, a certified true copy of Ingram's Judgment and Commitment Order for this felony was introduced at trial. We are of opinion that the government met its burden of proof on this element. Accordingly, we find no error, plain or otherwise, in the court's jury instructions nor inadequacy in the government's proof.
 
 C.
 
 15
 Lastly, Ingram challenges the sufficiency of the evidence to support his conviction. We will not disturb the verdict of jury if there is substantial evidence, taking the view most favorable to the government, to support it. Glasser v. United States, 315 U.S. 60, 80 (1942).
 
 
 16
 Ingram first argues that the government failed to prove a "close and contemporaneous" nexus between the firearm and interstate commerce required in a Section 922(g) unlawful possession case. He asserts that the "in or affecting commerce" language referring to unlawful possession, as opposed to the "which has been shipped or transported in interstate ... commerce" language referring to unlawful receipt, requires a present tense nexus between the firearm possessed and interstate commerce.[7] He contends that the jury was instructed and conviction found on an erroneous "previously traveled" in commerce standard.
 
 
 17
 In Scarborough v. United States, 431 U.S. 563 (1977), the Supreme Court examined the interstate nexus requirement of Section 1202(a), the predecessor to Section 922(g), and determined that only a minimal nexus is necessary.[8] The Court specifically rejected the contention that the nexus be contemporaneous with possession and held that proof that the possessed firearm previously traveled at some time in interstate commerce was sufficient to satisfy the statutorily required nexus between possession and commerce. 431 U.S. at 575. Subsequently, many courts of appeal have held that proof establishing that a particular firearm was manufactured outside of the state where the defendant was found in possession supports an inference that the firearm had traveled in interstate commerce under the current form of the statute, Section 922(g). See e.g., United States v. Fish, 928 F.2d 185, 186 (6th Cir.), cert. denied, 60 U.S.L.W. 3259 (U.S.1991). We join these circuits and hold that testimony that a firearm was manufactured out of the state of possession is sufficient to meet the interstate commerce element of Section 922(g).
 
 
 18
 Special Agent James Kegley testified as an expert for the government that the make and model of the shotgun observed by Officer Vinson was manufactured only in Massachusetts by J.C. Higgins, Co. for Sears and Roebuck, and therefore had necessarily traveled in interstate commerce prior to Ingram's possession. We are of opinion that this evidence was sufficient to establish the interstate commerce nexus element.
 
 
 19
 Ingram also contends that because the shotgun was not produced at trial there was insufficient evidence from which the jury could find actual or constructive possession of the alleged firearm.[9] The failure to produce the actual firearm at trial will not prevent conviction under Section 922(g) when the government offers sufficient evidence, from witness testimony and otherwise, that the defendant possessed the said firearm. See United States v. Jones, 907 F.2d 456, 460 (4th Cir.1990). In the present case, Officer Tynan testified that he saw Ingram with the shotgun on the morning of March 17, stopped him and examined the gun, and then recorded the encounter, along with a description of the gun, on the police form. The police form was introduced at trial. Ingram's friend, Brown, also testified that Ingram removed the shotgun from his house earlier that morning. We, therefore, are of opinion that there was sufficient evidence from which a jury could find that Ingram possessed the firearm.
 
 Accordingly, the judgment of conviction is
 
 20
 AFFIRMED.
 
 
 
 [1]
 Trial testimony established that Brown bought what he believed to be his gun later that morning from an individual on Wayt Street. Brown testified that he no longer had the gun. The government has never had possession of the firearm, thus it was not produced at trial
 
 
 [2]
 Directly following the close of the government's case, Ingram informed the court that his first witness had not yet appeared. The court suggested that Ingram make a Rule 29 motion and took a brief fifteen-minute recess. Ingram then made a Rule 29 motion for acquittal which was denied
 
 
 [3]
 18 U.S.C. Sec. 922(g)(1) reads in full:
 (g) It shall be unlawful for any person--
 (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;
 ....
 to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.
 
 
 [4]
 Plain error review requires 1) error; 2) plain under current law; 3) that affects substantial rights, i.e. is prejudicial to the defendant; and 4) which seriously affects the fairness, integrity or public reputation of judicial proceedings. Olano, at 4423
 
 
 [5]
 In determining whether or not a defendant's civil rights have been restored a court must look to the law of the state of conviction. Beecham v. United States, 62 U.S.L.W. 4311 (May 16, 1994); United States v. McLean, 904 F.2d 216, 218 (4th Cir.), cert. denied, 498 U.S. 875 (1990). Although N.C.G.S. Secs. 13-1 & 13-2 restore a convicted felon's civil rights upon unconditional discharge, N.C.G.S. Sec. 14-415.1 prohibits his right to possess a firearm "within five years from the date of [a felony] conviction, or the unconditional discharge from a correctional institution, or termination of a suspended sentence, probation, or parole upon such conviction, whichever is later." Unites States v. Clark, 993 F.2d at 404
 
 
 [6]
 In addition to the July 8, 1987 predicate felony conviction, the defendant also admitted on cross-examination to two prior felony convictions in 1991. These convictions further demonstrate that Ingram's right to possess firearms was not restored on March 17, 1992 because he had not been out of the state's custody for five full years
 
 
 [7]
 18 U.S.C. Sec. 922(g) makes it unlawful for a convicted felon
 to ship or transport in interstate commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.
 
 
 [8]
 Although the predecessor statute did not distinguish between transportation, possession or receipt of the firearm as does the current Sec. 922(g), it did use the "in or affecting commerce" language in reference to possession. Section 1202(a) read in pertinent part:
 (a) Any person who--
 (1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony,....
 who receives, possesses, or transports in commerce or affecting commerce, ... any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.
 Scarborough, 431 U.S. at 564 n. 1.
 
 
 [9]
 Although Ingram characterizes this argument as a Due Process and Sixth Amendment Trombetta claim, his argument regarding lack of production of the firearm is really a sufficiency of the evidence challenge and will be reviewed as such