PUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 95-5726

ANDRE CARDELL KING,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 95-5936

CHALMERS LAVETTE HENDRICKS,
Defendant-Appellant.

Appeals from the United States District Court
for the Western District of North Carolina, at Charlotte.
Richard L. Voorhees, Chief District Judge; Terrence W. Boyle,
District Judge, sitting by designation.
(CR-94-30)

Argued: June 3, 1997

Decided: July 24, 1997

Before WILKINS, NIEMEYER, and HAMILTON, Circuit Judges.

_____

Affirmed in part, reversed in part, and remanded for resentencing by
published opinion. Judge Wilkins wrote the opinion, in which Judge
Niemeyer and Judge Hamilton joined.

_____

**COUNSEL**

**ARGUED:** James Ernest Gronquist, Charlotte, North Carolina; Robert A. Flynn, LAW OFFICE OF MARCIA G. SHEIN, P.C., Atlanta, Georgia, for Appellants. Robert James Conrad, Jr., Assistant United States Attorney, Charlotte, North Carolina, for Appellee. **ON BRIEF:** Marcia G. Shein, LAW OFFICE OF MARCIA G. SHEIN, P.C., Atlanta, Georgia, for Appellant King. Mark T. Calloway, United States Attorney, Charlotte, North Carolina, for Appellee.

_____

**OPINION**

WILKINS, Circuit Judge:

Andre Cardell King and Chalmers Lavette Hendricks appeal their convictions for various charges related to their narcotics distribution activities. For the reasons set forth below, we affirm all of King's convictions and the majority of Hendricks' convictions. However, because--as the Government concedes--the evidence is insufficient to support Hendricks' conviction under 18 U.S.C.A. § 924(c)(1) (West Supp. 1997), predicated upon a firearm that was found in his home, we reverse that conviction and remand for resentencing.

I.

Appellants' convictions stem from the investigation of Neville Smith, who led a cocaine distribution ring in the Charlotte, North Carolina area from 1991 until 1994. Beginning in the fall of 1993, Smith supplied King with kilogram quantities of cocaine, which King then converted to cocaine base. King stored the cocaine base at Hendricks' apartment and distributed it with Hendricks' assistance.

On September 27, 1993, law enforcement officers received a tip from an anonymous informant that King had recently delivered cocaine to Hendricks' apartment and that the drugs had been transported in a blue rental vehicle and a Toyota Cressida. Shortly thereafter, the manager of the apartment complex where Hendricks lived reported complaints of suspected narcotics activity in and around

2

Hendricks' apartment. Based on this information, Officer R. F. Busker of the Charlotte-Mecklenburg, North Carolina Police Department conducted surveillance of the apartment. Officer Busker observed heavy traffic flow consistent, in his experience, with narcotics dealing. At Officer Busker's direction, law enforcement personnel detained and searched two vehicles that had been observed leaving the apartment, one of which was a blue automobile that had been rented by King. Neither search revealed narcotics. Thereafter, Officer Busker observed Hendricks exit the apartment and drive away in a Toyota Cressida. He stopped the vehicle and, when Hendricks stepped out of the automobile, observed a bulge under the floor mat in front of the driver's seat. Upon closer inspection, Officer Busker found a loaded .357 revolver. A search of the vehicle incident to Hendricks' arrest for possession of the firearm revealed 59 pieces of cocaine base in the console between the front seats. Based upon these events, officers obtained a search warrant for Hendricks' apartment. During execution of the warrant, officers found $999 in cash; a nine millimeter handgun; a quantity of cocaine base; a digital scale; and several types of ammunition. Hendricks subsequently moved to suppress the weapon and cocaine base found in his automobile and the items seized during the search of his apartment, arguing that the initial stop of his vehicle was unlawful and that all of the evidence subsequently obtained constituted the tainted fruits of the illegal seizure. The district court denied the motion.

Hendricks and King were tried jointly. The jury returned a verdict of guilty as to each defendant for conspiracy to possess with the intent to distribute cocaine and cocaine base. See 21 U.S.C.A. § 846 (West Supp. 1997). Additionally, Hendricks was convicted of possessing with the intent to distribute cocaine base, see 21 U.S.C.A. § 841(a)(1) (West 1981); two counts of using or carrying a firearm during and in relation to a drug trafficking crime, see 18 U.S.C.A. § 924(c)(1); and being a felon in possession of ammunition, see 18 U.S.C.A. § 922(g)(1) (West Supp. 1997). The jury convicted King of possessing with the intent to distribute cocaine, see 21 U.S.C.A. § 841(a)(1); using or carrying a firearm during and in relation to a drug trafficking crime, see 18 U.S.C.A. § 924(c)(1); and being a felon in possession of a firearm, see 18 U.S.C.A. § 922(g)(1). Hendricks and King appeal their convictions, and we consider their challenges in turn.

II.

A.

Hendricks first challenges the legality of his conviction for being a felon in possession of ammunition. See 18 U.S.C.A. § 922(g)(1). This charge was predicated on the discovery of several types of ammunition during the search of Hendricks' apartment and on his 1990 state felony conviction for possession with the intent to sell and deliver a controlled substance. Hendricks argues that because North Carolina law permits a convicted felon to possess a firearm (and by implication, ammunition) in his home, see N.C. Gen. Stat. § 14-415.1(a) (Michie 1993), federal prosecution for the same conduct was improper. For the reasons that follow, we disagree.

Section 922(g)(1) prohibits, inter alia, the possession in or affecting interstate commerce of any firearm or ammunition by "any person ... who has been convicted in any court of[ ] a crime punishable by imprisonment for a term exceeding one year." The term "crime punishable by imprisonment for a term exceeding one year" excludes, however, "[a]ny conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored ... unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." 18 U.S.C.A. § 921(a)(20) (West Supp. 1997). Hendricks essentially maintains that N.C. Gen. Stat.§ 14-415.1(a) restored his civil right to possess a firearm in his home immediately upon his release from state prison for the 1990 drug conviction, thereby rendering this conviction an improper basis for the federal felon-in-possession charge. Whether a defendant's civil rights have been restored is a legal question, which we review de novo. See United States v. Morrell, 61 F.3d 279, 280 (4th Cir. 1995).

In determining whether a defendant's civil rights have been restored, we "look to `the whole of state law'" to determine whether the state has returned to the defendant the rights to vote, to hold public office, and to serve on a jury. United States v. Hassan El, 5 F.3d 726, 734 (4th Cir. 1993) (quoting United States v. McLean, 904 F.2d 216, 218 (4th Cir. 1990)). And, while the restoration of rights need not be complete in order to preclude consideration of a conviction

4

under § 922(g)(1), the quantity of rights restored must be more than de minimis. See id.

Here, Hendricks concedes that because he has not yet been unconditionally discharged from parole, his civil rights have not been restored under North Carolina law. See N.C. Gen. Stat. § 13-1(1) (Michie 1992) (providing for the automatic restoration of civil rights upon the unconditional discharge of an inmate, probationer, or parolee). Nevertheless, he maintains that the explicit grant of permission by a North Carolina statute to possess a firearm in his home constitutes a sufficient restoration of rights to preclude prosecution under federal law. In support of this position, Hendricks points to prior decisions which he asserts have upheld the right of a North Carolina felon to possess a firearm in his home. See United States v. Shoemaker, 2 F.3d 53, 56 (4th Cir. 1993); United States v. McBryde, 938 F.2d 533, 535-36 (4th Cir. 1991). However, Shoemaker and McBryde provide little support for Hendricks' position because in each of those cases the defendant's civil rights had been restored. See Shoemaker, 2 F.3d at 54; McBryde, 938 F.2d at 534.

We conclude that the fact that state law permitted Hendricks to possess a firearm in his home despite his status as a convicted felon whose civil rights had not been restored is not sufficient to insulate him from federal prosecution under § 922(g)(1).[1] A prior felony conviction is exempt from use as a predicate offense under § 922(g)(1) only if the "defendant has had his or her civil rights and his or her firearm privileges restored." Hassan El, 5 F.3d at 733; see United States v. Clark, 993 F.2d 402, 403 (4th Cir. 1993). When civil rights have not been restored, the right to possess a firearm is immaterial. See United States v. Thomas, 991 F.2d 206, 214 (5th Cir. 1993) ("In the absence of the restoration of essentially all civil rights of the convicted felon ... the felon's isolated right to possess a firearm is of no

_____

[1] The Government also argues that North Carolina law does not bar federal prosecution because federal law explicitly prohibits the possession of ammunition, while state law refers only to the right to possess firearms. In view of our conclusion that the prosecution of Hendricks was proper because his civil rights had not been restored, we need not consider whether this distinction between state and federal law is dispositive.

5

import whatsoever."). Accordingly, because Hendricks' civil rights had not been restored, prosecution under § 922(g)(1) was proper regardless of whether possession of the ammunition in question was permitted by state law.

B.

Hendricks next maintains that the district court erred in denying his motion to suppress, arguing that Officer Busker could not have had a sufficiently reasonable suspicion of criminal activity in view of the fact that searches of the first two vehicles failed to uncover any contraband. Accordingly, he contends, the stop of his vehicle violated the Fourth Amendment and all evidence seized as a result of the improper detention should have been suppressed. See Wong Sun v. United States, 371 U.S. 471, 484-85 (1963). The Government responds that, contrary to Hendricks' assertions, the search of the blue rental vehicle in fact supported a reasonable suspicion of criminal activity because it corroborated statements made by the anonymous informant. Whether the stop of Hendricks' vehicle was based on a reasonable suspicion of criminal activity is a mixed question of law and fact subject to de novo review. See Ornelas v. United States, 116 S. Ct. 1657, 1662 (1996).

The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. And, it is well settled that a search conducted without a warrant is per se unreasonable unless it falls within one of the "well-delineated exceptions" to the warrant requirement. Katz v. United States, 389 U.S. 347, 357 (1967). One such exception is the authority of law enforcement officers to effect a limited investigatory detention when they possess "a reasonable and articulable suspicion that the person seized is engaged in criminal activity." Reid v. Georgia, 448 U.S. 438, 440 (1980) (per curiam); see Terry v. Ohio, 392 U.S. 1, 21-22 (1968). A reasonable, articulable suspicion is "`a particularized and objective basis' for suspecting the person stopped." Ornelas, 116 S. Ct. at 1661 (quoting United States v. Cortez, 449 U.S. 411, 417 (1981)). In determining whether a detention is supported by reasonable suspicion, we look to the circumstances known to the officer and "the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." Terry, 392 U.S. at 27.

6

We hold that the initial stop of Hendricks' vehicle was justified under <u>Terry</u>. The surveillance of Hendricks' apartment was prompted by an anonymous tip informing law enforcement officers that King had delivered cocaine to the residence and that the narcotics were transported in a blue rental vehicle and a Toyota Cressida. Officer Busker's observation of heavy traffic in and out of the apartment confirmed the report from the manager of the complex and was consistent with drug activity. Further, although no cocaine was discovered during the search of the blue rental vehicle, officers did confirm that it had been rented by King. Additionally, Officer Busker observed Hendricks leave the apartment and enter a Toyota Cressida. Thus, the anonymous tip, the details of which were substantially confirmed by the observations of Officer Busker and others, provided a reasonable and articulable suspicion that contraband was contained in Hendricks' automobile, thereby justifying the investigatory detention of the vehicle. <u>See Alabama v. White</u>, 496 U.S. 325, 329-31 (1990). Accordingly, we conclude that the district court did not err in denying the motion to suppress.**2**

III.

The issues raised in King's appeal do not merit extended discussion. King first argues that the district court improperly questioned witnesses, thereby denying him a fair trial. We disagree. While the district court must maintain "`a general atmosphere of impartiality'" during the course of a trial, it nevertheless may interrogate witnesses as necessary to ensure the proper development of the facts. <u>United States v. Castner</u>, 50 F.3d 1267, 1272 (4th Cir. 1995) (quoting <u>United States v. Cassiagnol</u>, 420 F.2d 868, 878 (4th Cir. 1970)). Here, King

_____

**2** Hendricks also challenges the sufficiency of the evidence supporting his convictions on two counts of using or carrying a firearm during and in relation to a drug trafficking crime, <u>see</u> 18 U.S.C.A. § 924(c)(1), and one count of conspiracy to possess with the intent to distribute cocaine and cocaine base, <u>see</u> 21 U.S.C.A. § 846. The Government concedes that in light of <u>Bailey v. United States</u>, 116 S. Ct. 501 (1995), the evidence is insufficient as to the § 924(c)(1) count based on Hendricks' possession of a firearm in his home. We agree and accordingly reverse that conviction. However, we conclude that sufficient evidence supports Hendricks' convictions on the remaining § 924(c)(1) count and on the conspiracy charge, and we therefore affirm them.

challenges attempts by the district court to clarify the testimony of two witnesses, asserting that these "clarifications" actually aided the Government's case. Having reviewed the two colloquies in question, we conclude that the district court did not abuse its discretion. See id.

Next, King maintains that his trial counsel was constitutionally ineffective for failing to move to dismiss the indictment based upon a violation of his right to a speedy trial and for failing to file timely objections to the presentence report. However, it is well settled that "a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance." United States v. Williams, 977 F.2d 866, 871 (4th Cir. 1992). Because the record does not conclusively show that King's trial counsel was ineffective, we reject this claim.[3]

IV.

We hold that North Carolina law permitting, under certain circumstances, the possession of a firearm by a convicted felon whose civil rights have not been restored does not preclude federal prosecution for the same conduct. Additionally, we determine that law enforcement personnel possessed a reasonable and articulable suspicion that Hendricks' vehicle contained contraband and that the district court did not err in denying his motion to suppress. And, with the exception of one § 924(c)(1) conviction as to which the Government properly has confessed error, we conclude that the evidence is sufficient to support Hendricks' convictions. Because we conclude that King's challenge to the questioning of witnesses by the trial judge is without merit and his assertion of ineffective assistance of counsel is premature, we affirm as to him. Accordingly, we affirm in part, reverse in part, and remand for resentencing.

AFFIRMED IN PART; REVERSED IN PART;
AND REMANDED FOR RESENTENCING
_____

**3** King also raises numerous challenges in a pro se supplemental brief. We have carefully considered these allegations of error and find them to be without merit.

8