**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 25-4296

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

DUSTIN ERIC WILSON,

Defendant – Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Statesville.  Kenneth D. Bell, District Judge.  (5:23-cr-00049-KDB-DCK-6)

Argued:  March 20, 2026                                Decided:  April 21, 2026

Before GREGORY, AGEE, and BENJAMIN, Circuit Judges.

Affirmed by unpublished opinion.  Judge Gregory wrote the opinion, in which Judge Agee and Judge Benjamin joined.

**ARGUED:**  H. Justin Pace, H. JUSTIN PACE, PLLC, Asheville, North Carolina, for Appellant.  Anthony Joseph Enright, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.  **ON BRIEF:**  Russ Ferguson, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Circuit Judge:

Dustin Wilson was indicted on nine charges of violating federal drug trafficking laws. Wilson's charges carried a rebuttable presumption in favor of pre-trial detention and Wilson was detained, pending trial. Wilson remained in detention even after he developed severe bleeding in his mouth that went untreated for months. Ten months after his arrest, while his medical issues persisted, Wilson pled guilty to a single count of conspiracy to distribute and possess with the intent to distribute fentanyl and methamphetamine in violation of 21 U.S.C §§ 841(a)(1), (b)(1)(A) and 21 U.S.C. § 846. After pleading guilty, Wilson's medical issues were fully treated, and he was sentenced to 120 months in prison. Wilson now asks this Court to set aside his guilty plea.

Wilson argues that his guilty plea should be set aside because he received ineffective assistance of counsel, which prevented him from entering a plea that was made voluntarily and knowingly. To reach this conclusion, Wilson asks this Court to string a series of events together. First, Wilson asks this Court to conclude that his trial counsel acted objectively unreasonably by advocating for Wilson to receive treatment instead of release from detention. Second, Wilson wants this Court to find that if trial counsel had advocated for Wilson's release from detention, then release would have been granted. And, finally, Wilson not only wants this Court to impute his ongoing medical situation to counsel's advocacy, but also find that his ongoing medical issues precipitated a plea that was made in desperation.

The record simply does not support Wilson's concatenation of events. We hold that Wilson did not receive ineffective assistance of counsel and affirm Wilson's conviction.

2

## I.

In December 2023, Wilson was arrested and charged with nine counts of violating federal drug trafficking laws under 21 U.S.C. §§ 841(a)(1), (b)(1)(A)–(C), 846, and 18 U.S.C. § 924(c)(1)(A).  J.A. 10, 34.  These charges carried a rebuttable presumption in favor of detention pursuant to 18 U.S.C. §§ 3142(e)(3)(A)–(B) and required the lower court to weigh the factors enumerated in § 3142(g) when evaluating whether pre-trial release was appropriate.  After conducting a detention hearing, the lower court concluded that Wilson failed to introduce sufficient evidence to rebut the presumption in favor of detention, finding that no condition or combination of conditions would reasonably assure Wilson's appearance in future proceedings and the safety of the community.  J.A. 72–73.  Thus, Wilson was detained.  J.A. 73.

On April 16, 2024, Wilson's counsel filed a Motion to Reopen Detention Hearing and Review Detention Order.  J.A. 74–75.  Wilson had developed "severe bleeding in his mouth" that was "so bad that [Wilson] wakes up in the morning choking on a mouth full of blood."  J.A. 74.  Counsel asked the lower court to "release [Wilson] from custody or transfer him to a different facility[1] that can adequately treat his medical situation."  J.A. 75.  The Government filed a response in opposition on April 23, 2024, indicating that the detention facility was aware of Wilson's medical issue and that it was "scheduled to be addressed."  J.A. 78.  Based upon the Government's representations, the court denied Wilson's motion on April 30, 2024.  J.A. 5.

---

[1] Wilson was being held at the McDowell County Detention Center.  J.A. 74.

Wilson did not receive the medical care promised by the Government. Wilson's counsel filed a Motion to Reconsider the Motion to Reopen Detention Hearing and Review Detention Order on May 10, 2024. J.A. 79. Wilson's medical condition had worsened and "[was] so consuming [Wilson] that it [was] distracting his attention from being able to assist with his defense and breaking his will to the point that he kep[t] asking if he pleads guilty will they get him some medical treatment." J.A. 81. Counsel again asked the court to "release [Wilson] from custody or transfer him to a different detention facility that can adequately treat his medical situation." *Id.*

A hearing on the Motion to Reconsider was held on May 15, 2024. J.A. 84. Wilson's medical situation, the detention facility's inability to provide sufficient treatment, and whether release or transfer to another facility would alleviate Wilson's situation were discussed at length. Nevertheless, the lower court appeared skeptical of release. J.A. 69, 90, 109, Oral Arg. at 4:34 – 4:41, 17:20 – 17:23. In the face of this adversity, Wilson's counsel pivoted: "we're not asking the Court to release him. If we can just get him some treatment." J.A. 90. On May 17, 2024, the court participated in a telephone conference with the parties, after which the court "conclude[d] that the quickest way for Defendant to receive the medical treatment he needs is to remain where he is – in the McDowell County Jail." J.A. 109. Based on this, the lower court denied Wilson's motion on May 22, 2024. J.A. 109–110.

Even though release was denied, the lower court scheduled a status hearing "[t]o ensure" that Wilson received the treatment promised by the Government. *Id.* This hearing occurred on June 20, 2024, at which point Wilson's counsel reported that Wilson had one

4

visit with the dentist, but that Wilson still needed additional medical treatment and desired a transfer.  J.A. 113, 116.  Wilson's underlying case was "waiting on some DNA and some fingerprint evidence" without which counsel was unwilling to proceed to trial.  J.A. 114.  In August, Wilson mailed a pro se letter to the Court indicating that his dental issues persisted and echoing counsel's request that he be transferred to another facility.[2]  J.A. 120–121.

Wilson pled guilty to one count of conspiracy to distribute and possess with intent to distribute fentanyl and methamphetamine on October 17, 2024.  At his plea hearing, Wilson indicated that his mind was clear, J.A. 131, that he was satisfied with the services of his attorney, J.A. 139, and that he understood all parts of the proceeding.  J.A. 140.  Neither Wilson nor trial counsel mentioned Wilson's ongoing medical issues during the plea hearing.  The lower court found that Wilson's plea was knowingly and voluntarily made.  J.A. 141.  After entering his plea agreement, Wilson was transferred to a facility in Caldwell, Georgia.  J.A. 164.  Eventually, Wilson's medical issues were fully resolved.[3]

Wilson was sentenced to 120 months in prison on May 21, 2025.  J.A. 176.  At his sentencing hearing, counsel described Wilson as "a very active participant and helpful" in his defense.  J.A. 164.  Wilson wanted to "see all the discovery" and Wilson "was able to

---

[2] Wilson also asserted several constitutional challenges to the conditions of his confinement at the McDowell County Detention Center.  Those claims are not properly before this Court on direct appeal.

[3] There is no indication in the record when or where Wilson was finally provided adequate medical treatment.  It does appear that Wilson received treatment and had fully recovered by the time of his May 21, 2025, sentencing hearing.  J.A. 164.

point out things" without which "[Wilson and counsel] wouldn't have been able to resolve and iron out certain agreements with the government." *Id.* Counsel further represented that "Mr. Wilson was ready to accept responsibility at a very early point" for his conduct,[4] but that Wilson had some concerns related to firearm charges for which counsel requested DNA analysis. J.A. 163. The DNA evidence proved to be "critical;" it exonerated Wilson from the firearm charges, which subsequently eliminated certain statutory minimum sentencing requirements. *Id.*

Judgment was entered against Wilson on May 21, 2025. J.A. 175. Wilson filed his Notice of Appeal on May 26, 2025. J.A. 182.

## II.

Criminal defendants have a Sixth Amendment right to the effective assistance of counsel at all critical stages of a criminal proceeding. *Lafler v. Cooper*, 566 U.S. 156, 165 (2012). To establish ineffective assistance of counsel, a defendant must show (1) that counsel's performance was objectively deficient, and (2) that this deficient performance caused prejudice. *United States v. Freeman*, 24 F.4th 320, 326 (4th Cir. 2022). Counsel's performance is deficient where it falls below an "objective standard of reasonableness . . . under prevailing professional norms." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Deficient performance results in prejudice where there is a "reasonable probability that,

---

[4] Wilson's willingness to accept responsibility for his actions was repeated during his appeal. Oral Arg. at 11:59–12:01.

6

but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

Wilson brings his ineffective assistance of counsel claim on direct appeal.[5]  We review this type of claim *de novo* and grant reversal only where it "'conclusively appears in the trial record itself that the defendant was not provided . . . effective representation.'" *Freeman*, 24 F.4th at 326 (quoting *United States v. Fisher*, 477 F.2d 300, 302 (4th Cir. 1973) (quoting *United States v. Mandello*, 426 F.2d 1021, 1023 (4th Cir. 1970))).

## A.

A defendant alleging ineffective assistance "must identify the acts or omissions of counsel" that were not objectively reasonable.  *Strickland*, 446 U.S. at 690.  "The Court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id*.  "[T]his Court's scrutiny of counsel's performance 'must be highly deferential,' and we 'must indulge a strong presumption that counsel's conduct'" was reasonable. *Freeman*, 24 F.4th at 326 (quoting *Strickland*, 466 U.S. at 689).

On direct appeal, statements from counsel are the best source of evidence for acts or omissions that are not objectively reasonable. *See id.* at 331 ("we declined to adjudicate on direct appeal in *United States v. DeFusco*, 949 F.2d 114, 120 (4th Cir. 1991), on the grounds that we considered it 'unfair to adjudicate the issue without any statement from

---

[5] Even though direct appeal is technically available to Wilson, a claim of ineffective assistance of counsel should normally be raised by a motion in the district court under 28 U.S.C. § 2255. *United States v. King*, 119 F.3d 290, 295 (4th Cir. 1997), *United States v. Fisher*, 477 F.2d 300, 302 (4th Cir. 1973).

counsel on the record'"). The record before this Court is replete with statements from Wilson's trial counsel, but none of those statements directly address why trial counsel advocated for Wilson's transfer instead of release. They do, however, reflect trial counsel's zealous advocacy to secure Wilson proper medical care. Pursuing medical treatment for a client can hardly be cast as an objectively unreasonable course of action. *But cf. Fisher*, 477 F.2d at 302 (defense counsel's insufficient preparation amounted to ineffective assistance), *Freeman*, 24 F.4th at 329 (waiving a meritorious objection or demonstrating ignorance of a point of law fundamental to a defendant's case is evidence ineffective assistance).

Wilson's trial counsel astutely used motion practice to draw the court's attention to Wilson's medical situation and the Government's failure to timely provide proper treatment. Even after recognizing that the trial court was not going to grant Wilson's request for relief, trial counsel continued to press for Wilson to receive timely medical treatment through alternative means, including transfer. J.A. 69, 90, 109, Oral Arg. at 4:34 – 4:41, 17:20 – 17:23. Wilson argues on appeal that pursuing transfer was unreasonable because the lower court was even less likely to grant transfer than release. Oral Arg. at 4:40 – 4:45. If counsel's goal had been to secure Wilson's transfer, then this argument may hold some water. But if counsel's goal was to apply pressure to the Government to ensure that Wilson received the promised medical care, then trial counsel's advocacy was more than just reasonable, it was zealous. Counsel's actions, including myriad phone calls to the detention facility, U.S. Marshalls and the U.S. Attorney's Office, motion practice,

8

and hearings with the court, as well as counsel's statements on the record support the latter conclusion.

Counsel acted well within the bounds of professional norms when he decided to focus on securing medical treatment for his client instead of release. Indeed, Wilson's own words corroborate that trial counsel was acting pursuant to Wilson's instructions; in his *pro se* letter to the court, Wilson requested transfer to another facility where he would receive medical treatment—not release. J.A. 120. Thus, Wilson's trial counsel did not only act reasonably, but counsel also acted to get Wilson what he wanted: a transfer to another facility.

## B.

Even if trial counsel's decision to advocate for transfer was unreasonable, there was no resulting prejudice because Wilson's medical situation did not amount to a material change in circumstances sufficient to overcome the rebuttable presumption in favor of detention under 18 U.S.C. § 3142(e)(3). Nor does the record before this Court support Wilson's claims that his medical situation precipitated his guilty plea in any way. Rather, the record before this Court reflects that Wilson made his guilty plea knowingly and voluntarily, when it was advantageous for him to do so.

## III.

Wilson was charged with nine counts of violating federal drug trafficking laws under 21 U.S.C. §§ 841(a)(1), (b)(1)(A)–(C), 846, and 18 U.S.C. § 924(c)(1)(A). J.A. 10, 34. These charges required the court to "presume[] that no condition or combination of

conditions [would] reasonably assure the appearance of [Wilson at future proceedings] as required and the safety of the community." 18 U.S.C. § 3142(e)(3). This presumption is rebuttable. *Id*. When determining whether a criminal defendant has rebutted this presumption, the court "shall" consider the following factors:

(1) the nature and circumstances of the offense charged, including whether the offense . . . involves . . . a controlled substance [or] firearm. . .
(2) the weight of the evidence against the person
(3) the history and characteristics of the person, including--
    a. the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
    b. whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

§ 3142(g). A "decision to detain isn't set in stone, as the defendant can ask the court to revisit the question if his circumstances materially change." *United States v. Vane*, 117 F.4th 244, 252 (4th Cir. 2024).

Wilson does not dispute that the statutory factors weighed in favor of detention at the time of his arrest. Nor does he dispute that he was unable to overcome the rebuttable presumption in favor of detention at the time of his original detention hearing. Brief of Appellant, 20. Instead Wilson contends that his subsequent medical issues and the detention facility's inability to treat him amounted to a change in circumstances that outweighed all the other § 3142(g) factors. Thus, if only trial counsel had pressed for Wilson's release, then release would have been granted.

10

A change in one statutorily enumerated factor is not enough to tilt the scales in favor of pre-trial release, especially when it is uncontested that the other statutory factors support detention. *See, Vane*, 117 F.4th at 250 (courts must consider all the "'available information' together" when determining whether to grant pre-trial release (citing § 3142(g)(1)–(4)); § 3142(g) (during a detention hearing "the judicial officer *shall . . .* take into account" all four of the factors listed) (emphasis added). Wilson's medical situation only implicated one of the statutory factors: the "history and characteristics of the [defendant], including . . . [his] physical and mental condition." § 3142(g)(3)(a). Wilson does not argue, nor does the record reflect, that the other § 3142(g) factors materially changed. All available information supports the lower court's conclusion that "[Wilson was] not a good candidate for bond based on the charges and his prior criminal record,[6] among other things." J.A. 109. Wilson was not prejudiced by counsel's request for a transfer because Wilson's change in medical situation, by itself, was insufficient to secure Wilson's release.

## IV.

The record also simply does not support Wilson's claims that his ongoing medical issues, which he wants to impute to trial counsel's advocacy, infected his plea proceedings. To reach this conclusion, Wilson presents two arguments: first, that he only entered his guilty plea out of desperation, Brief of Appellant at 13, 24, 25, 28, and second, that his pain

---

[6] Wilson had a Criminal History Category of II. J.A. 149. His criminal record included a conviction for possession with intent to sell or deliver cocaine. J.A. 51, 66.

distracted him from fully participating effectively in his plea negotiations. *Id*. at 1, 24. To prevail on his first theory, Wilson must "show 'that there is a reasonable probability that, but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial.'" *Lafler*, 566 U.S. 156, 163 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). To prevail on his second theory, Wilson "must demonstrate a reasonable probability . . . that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Missouri v. Frye*, 566 U.S. 134, 147 (2012). Under either standard of review the uncertainty and strategy inherent to plea bargaining imposes "a most substantial burden on the claimant [wishing to avoid a plea] to show ineffective assistance." *Premo v. Moore*, 562 U.S. 115, 132 (2011).

The record fails to support the inference either that, but for Wilson's medical condition, then Wilson would have insisted on going to trial, or that the Government would have offered Wilson a more favorable plea or a lesser sentence. In fact, the record evidence directly contradicts both claims. Wilson represented to each lower court and to this Court that he is willing to accept responsibility for his actions. J.A. 149, 163, 167, Oral Arg. at 11:59 – 12:01 ("Mr. Wilson continues to accept responsibility" for his actions). Willingness to accept responsibility vitiates Wilson's attempts to argue that he would have proceeded to trial if only his medical issues had been resolved prior to plea negotiations. Wilson also received a sentence of 120 months, which was lower than the Government's recommended sentence of 136 months. J.A. 168. There is also no evidence in the record before this Court that Wilson was offered, or would have ever been offered, the opportunity to plead guilty to a lesser crime.

12

Instead, the record shows that Wilson entered his plea after the Government received "critical" exculpatory DNA evidence. J.A. 114–15, 149, 163. Upon receipt of this DNA evidence, the Government dismissed certain firearms-related charges against Wilson. J.A. 163, 173, 149. Absent these firearm charges, Wilson was eligible for a lesser minimum sentence. J.A. 163, 172, 149. Wilson's plea appears to have been negotiated at a favorable moment in time for both Wilson and the Government. Nothing in the record supports Wilson's claim that there was a reasonable probability that he would have secured a better sentencing result if he had not been burdened by his medical issues.

## V.

The record before this Court does not conclusively establish that Wilson's counsel acted unreasonably or that Wilson was prejudiced by trial counsel's decision to advocate for Wilson's transfer to another detention facility. We conclude that Wilson's trial counsel did not provide ineffective assistance. We find that Wilson's guilty plea was valid and, therefore, affirm the conviction and sentence.

*AFFIRMED*

13